## DAVIS *v.* DUNN.

### Opinion delivered February 12, 1923.

1. LIMITATION OF ACTIONS—DAMAGE BY NUISANCE.—Where a nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original and may at once be fully compensated, in which case the statute of limitations begins to run upon the construction of the nuisance; but where, although the structure constituting a nuisance is permanent in its character, its construction and continuance are not necessarily injurious, but may or may not be so, the injury to be compensated is only the damage which has happened, and there may be as many recoveries as there are successive injuries, and the statute of limitations begins to run from the happening of the injury.

2. LIMITATION OF ACTIONS—NUISANCE—ORIGINAL INJURY.—That the extent of an injury is difficult to determine or its ascertainment is inconvenient or expensive does not prevent the injury from being original.

3. LIMITATION OF ACTIONS—ORIGINAL INJURY.—An action against a railroad company for damages to crops by reason of its failure to provide sufficient openings in a dump to permit overflow waters from a river to pass off, *held* barred by the three-year statute; the damage being caused by the original construction of the dump.

4. EMINENT DOMAIN—INJURY TO NON-CONTIGUOUS LAND.—Injuries to crops by reason of a railroad's failure to provide sufficient openings in its dump to permit overflow waters to pass off is a compensable injury to property within the meaning of the Constitution, whether it abuts on the railroad or not.

Appeal from Calhoun Circuit Court; *Charles W. Smith,* Judge; reversed.

*Thos. S. Buzbee, H. T. Harrison* and *C. L. Johnson,* for appellant.

The damage was original, and any cause of action is now barred by the three-year statute of limitation, which runs from the completion of the obstruction to the watercourse. 35 Ark. 622; 62 Ark. 364; 86 Ark. 406; 92 Ark. 406; 107 Ark. 330. The government was in the attitude of a lessee. To render it liable, it must have had notice of the existence of the defect, or have had time to acquire such knowledge. 20 R. C. L. 395. However, damages were sought from the government by reason of its construction of a nuisance—a thing which was in existence for such a length of time before United States control as to have become permanent, and with which the government had nothing to do in creating.

*C. L. Poole* and *J. S. McKnight,* for appellees.

There was no injury prior to 1919. Where a structure is permanent, and its construction and maintenance are not necessarily injurious, but may become so, the injury to be compensated is only the injury which has happened, and there may be as many successive recoveries as there are successive injuries. In such cases the statute of limitations begins to run from the happening of the injury. Greenleaf, Ev. 433; Wood on Nuisances, sec. 865; Wood on Limitation, 180; Angell on Limitation, sec. 300; 52 Ark. 244. Unless the injury was certain or apparent upon the construction of the dump, the statute would not begin to run until some damage had actually occurred. 56 Ark. 612; especially is this true where the damages are only speculative and conjectural. 107 Ark. 65; 95 Ark. 297; 92 Ark. 465; 107 Ark. 330. This court has distinguished between a complete obstruction of a drainway and a partial obstruction, which determines whether the damage was original in the following cases. 80 Ark. 237 and 76 Ark. 542.

It was the duty of appellant as lessee and operator to keep the drain open. 80 Ark. 238.

McCulloch, C. J. Appellees own and operate a farm in Calhoun County and in the valley of Ouachita River, near the place where the line of railroad of the Chicago, Rock Island & Pacific Railway Company crosses that stream, and they instituted separate actions in the circuit court of Calhoun County against said railway company and the Director General of Railroads for damages to crops in the year 1919, alleged to have been caused by the overflow waters from the Ouachita River. The right of action in each case was based upon alleged acts of negligence on the part of the defendants, in failing to provide sufficient openings in the railroad dump to permit the waters to pass off.

The causes were consolidated, and the court sustained demurrers in favor of the said railway company and dismissed the complaint as to that defendant, leaving the cause to proceed against appellant Davis, Director General of Railroads, as agent. The trial of the consolidated causes resulted in a verdict in favor of each of the appellees for the recovery of damages.

Among other defenses there was a plea of the statute of limitations, and a denial of responsibility of the Director General of Railroads for failure to provide for additional openings in the dump constructed by the railroad company prior to the time the railroad came under government control. In other words, the question raised by this answer was that the damage to the crops of appellees was caused by the original construction of the dump, which occurred more than three years before the commencement of these actions, and was barred by limitation, and that the government was not liable for the original injury caused by a negligent act of the railway company. Appellant asked the court to give the jury a peremptory instruction in his favor on the grounds stated above.

This line of the Chicago, Rock Island & Pacific Railway Company was constructed during the year 1907. At the place where the railroad crosses the Ouachita River there is a low bottom, about three miles wide,

which is subject to inundation by overflowed waters of the river. At the time of the original construction of the railroad there was a trestle across this bottom, but in the year 1912 the railway company filled in the trestle so that the track rested on a dump. There was an open space of 3,200 feet for the railroad trestle and bridge across the river, and about a mile and a half from the river there was an opening of 425 feet left in the dump for the passage of water. The theory of appellees is that the opening in the dump was insufficient to let the water pass out, and that this constituted a continuing act of negligence for which damages might be recovered from time to time as injury resulted from the overflow.

There is evidence tending to show that the height of the overflow and the length of time it consumed in passing off were increased by the construction of the dump, and that the opening was insufficient to permit the water to flow through.

The overflow came in October, 1919, and damaged the crops of cotton grown by each of the appellees. The evidence adduced by the appellees tended to show that the height of the water during the overflow had been increased from the time the dump was erected, but that no damage had been done prior to the year 1919, for the reason that the overflow had not come at a season of the year when there were growing crops.

We are of the opinion that, according to the undisputed facts, the injury, if any, was original, and that appellees' cause of action against the railroad company was barred by the statute of limitations; and that, for the same reason, there was no liability at all on the part of the government for damage caused during its operation of the railroad.

The decisions of this court on this subject are very numerous, and there is no uncertainty as to the law. Doubts which arise on the subject are concerning the application of the law. All of the cases are cited in *C., R. I. & P. Ry. Co.* v. *Humphreys*, 107 Ark. 330, and it is un-

necessary to review all of the decisions. Special reference to a few of them is necessary in order to show the varying application of the rule of law announced by this court. One of the leading cases on the subject in this court is *St. L. I. M. & So. Ry. Co.* v. *Biggs,* 52 Ark. 240, and the following statement of law, in the opinion in that case, has often been quoted in subsequent cases:

"Whenever the nuisance is of a permanent character and its construction and continuance are *necessarily* an injury, the damage is original, and may be, at once, fully compensated. In such case the statute of limitations begins to run upon the construction of the nuisance. * * * But when such structure is permanent in its character, and its construction and continuance are *not necessarily* injurious, but may or may not be so, the injury to be compensated in a suit is only the damage which has happened; and there may be as many successive recoveries as there are successive injuries. In such case the statute of limitation begins to run from the happening of the injury complained of."

We said in *C. R. I. & P. Ry. Co.* v. *Humphreys, supra,* that the fact that "damage is probable, or that even though some damage is certain," does not necessarily make the injury original so as to start the running of the statute of limitations. But it may be added that the fact that the extent of the injury is difficult to determine, or its ascertainment is inconvenient or expensive, does not prevent the injury from being original so as to permit recoveries for recurring injuries.

The following cases may be especially considered in determining the application of the law on this subject: *St. L. I. M. & So. Ry. Co.* v. *Biggs, supra; St. L. I. M. & So. Ry. Co.* v. *Anderson,* 62 Ark. 360; *C. R. I. & P. Ry. Co.* v. *McCutchen,* 80 Ark. 235; *Turner* v. *Overton,* 86 Ark. 406; *St. L. I. M. & So. Ry. Co.* v *Magness,* 93 Ark. 46: *Board of Directors of Levee District* v. *Barton,* 92 Ark. 406; *C. R. I. & P. Ry. Co.* v. *Humphreys, supra.*

In the present case it is evident that the obstruction, by reason of insufficient opening in the dump, was permanent in its nature, and that damage would result to adjacent lands if the natural flow of waters was obstructed. If the height of the overflow had been raised prior to this injury and at the time the injury occurred, as contended by appellees, this was a fact ascertainable by ordinary means in the beginning. All of the lands in the valley of the Ouachita were subject to overflow from that river, and this was just as certain in the beginning as it was at the time the injury occurred. Even though difficult to determine to what extent damage would result, it was, in fact, known or could have been known when the dump was completed. The only reason shown in the evidence why damage had not resulted theretofore was that the overflow had come at times of the year when there were no crops to be damaged. In this instance it so happened that the overflow came during the crop-gathering season, and the ungathered crop was damaged.

If the damage from this structure was not original, it is difficult for us to conceive a case where there would be such original injury. It is not material, in considering this question, that the railroad did not run through the lands of appellees. If the building of the dump caused the injury to lands, whether abutting on the railroad or not, it constituted an injury to the property within the meaning of the Constitution, for which there must be compensation, and appellees could have, in the beginning, recovered compensation for such injury.

Our conclusion being that there was no liability on the part of the government by reason of the fact that the injuries resulted from the original construction of the dump, it follows that there is no evidence upon which a recovery can be sustained, and the judgment is therefor reversed, and each of the consolidated actions is dismissed.