KIRK *v*. PULASKI ROAD IMPROVEMENT DISTRICT No. 10.

Opinion delivered December 20, 1926.

1.  EMINENT DOMAIN—LIABILITY FOR GRADING PART OF STREET.—Where the street in front of plaintiffs' property was partly ungraded, an improvement district engaged in paving the street was not liable to plaintiffs for reducing to grade the ungraded portion of the street, there being no change in the grade of the street in front of plaintiffs' property.

2.  EMINENT DOMAIN—DAMAGES FROM EXCAVATION.—Where a road improvement district, in widening a street and extending the grade, excavated part of a high bank in front of the property, the only element of damages recoverable by adjacent property owners was the actual injury to their property by loosening the soil in blasting off the face of the embankment. .

3.  EMINENT DOMAIN—DAMAGES IN WIDENING STREET.—In an action by property owners against an improvement district for damages by loosening the soil on his property caused by blasting in widening the street in front thereof, the measure of damages was the difference in market value of the property before and after the injury, if any, and not the cost of constructing a retaining wall or the depreciation in rental value.

4.  EMINENT DOMAIN—INJURY TO PROPERTY—DAMAGES.—Every element that can fairly enter into the question of market value and which a prudent business man would consider before purchasing the property should be considered by the jury in determining the difference between the value of property before and after it was damaged in constructing a highway.

5.  EMINENT DOMAIN—DAMAGES IN WIDENING STREET.—In an action by a property owner against an improvement district for damages by loosening the soil on plaintiffs' property by blasting in widening the street, evidence *held* to warrant recovery of substantial damages by property owners.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris*, Judge; reversed.

*Horace Chamberlin*, for appellant.

*Rose, Hemingway, Cantrell & Loughborough*, for appellee.

McCULLOCH, C. J. Appellants are the owners of two lots facing south on West Second Street, between Summit and Schiller avenues, in the city of Little Rock. They have owned these lots for many years, and there are three dwelling houses on them, built about the year 1900.

At that time the street in front of these lots had never been graded or otherwise improved. There was a downward slope from the south front of these lots to the opposite side of the street, and there was no sidewalk, but there was a pathway along in front of the houses, which was used by any one who had occasion to do so. The lots were situated in Plunkett's Addition to the city, and when this addition was laid out and platted there was a dedication of that portion of West Second Street to a width of sixty feet. In the year 1902 the city graded the street along there to a width of thirty-two feet, which was paved with brick, and a street-car track was laid thereon. There was a curb at the outer edge of the paving, which was ten or eleven feet south of the north line of the street as originally dedicated. In other words, in grading the street there was left ungraded a space of ten or eleven feet on the north side up to the property line. The north rail of the street-car track was within about three feet of the curb line, leaving an insufficient space for the passing of vehicles between the track and the curb. In grading the street there was left on the north side, in front of the property of appellants, a precipitous slate bank about ten feet high, and, in order to afford access to the dwelling houses, appellants provided steps set into the bank. Along the bank there was, as before stated, a pathway or trail used by pedestrians going along in front of the houses, but there was still no paved sidewalk.

In the creation of Pulaski Road Improvement District No. 10, authority was conferred upon the district to improve West Second Street, and this was done during the years 1923 and 1924. The city council passed an ordinance, just before the work of improving the street was begun, widening West Second Street in front of appellant's property to a width of forty feet. The ordinance provided that the road improvement district should do the work of widening the street and should make good any damages sustained by property owners. The work

was done by the district, and in doing so it was necessary to excavate the high bank in front of appellants' property. This was done to a width of eight feet, leaving about three feet of the dedicated street, but the top of the slope extended, in places, slightly beyond the property line. The widening of the street was all done on the north side, and there was a new curb line established within about three feet of the property line. As the bank sloped towards the south, the new excavation of eight feet left the slate bluff slightly higher. Appellants contended that the blasting away of the slate in excavating for the extension of the width of the street loosened the earth and rock to some extent back beyond the property line, thus invading their property, and that this caused the bank to cave or slough off from time to time, and that a retaining wall should be built in order to afford protection from that injury. They demanded that the district construct the retaining wall at its own expense, which was refused by the district, and they allege that the wall would cost about $3,500. They also allege that there was a loss of rental value of the property in the sum of $3,000, and this action was instituted by appellants against the district to recover the above sums, aggregating $6,500. There was a trial of the cause before a jury, which resulted in a verdict in favor of the district.

It is undisputed that the street in front of appellants' property was dedicated by the original owners to a width of sixty feet, and that the widening of the street by the district in making the new improvement did not extend to the line of appellants' property. No part of appellants' property was taken or used in the widening of the street, the only contention being that there was damage done to the property by loosening the bank and extending the top of the slope as a result of blasting away the face of the bluff. Nor was there any change in the grade of the street in front of appellants' property. That portion of the street which had been previously graded by the city

in the year 1902 was left unchanged, and the same grade was extended to a distance of eight feet in widening the street. That part of the street had not theretofore been graded, hence there could be no liability under the statute for changing the grade. *Red* v. *Little Rock Ry. & Elec. Co.*, 121 Ark. 71, 180 S. W. 220. Of course, there was no obligation on the part of the city or appellee district to build a sidewalk. The only element of recoverable damage, if any, was the actual injury done to the property of appellants in loosening the soil or slate when blasting off the face of the bluff. The issue as to this element of damage was properly submitted to the jury upon conflicting evidence, and the verdict of the jury against appellants is conclusive. The court's instructions were as follows:

"1. If you find for the plaintiff, you will find for them for the depreciation in the market value of their property caused by the invasion of their property line, and by the rendering of their properly line less accessible, if you find from the evidence it has been rendered less accessible by the invasion of their property line.

"2. If you find from the evidence in this case that, on account of the excavations made by directions of the defendant, the property of the plaintiff will in the future slide or crumble into the excavations, you would have a right to take that fact into consideration in determining the depreciation in the market value of the property of the plaintiffs.

"3. If you find from a preponderance of the evidence that the defendant, in widening Second Street, has invaded the plaintiffs' property line and has made a portion of said property useless to them by virtue thereof, and, if you find from such evidence that it has thereby deprived said properties of reasonably safe or convenient means of ingress and egress, then the court instructs you that such constitute injuries for which the plaintiffs should recover, and this is true, even though you may find

that the defendant did the work of widening the street in a skillful manner.''

Error of the court is assigned in submitting as the measure of damages the difference in market value of the property, if any, instead of the cost of restoration by the construction of a retaining wall, and also in refusing to submit, as a measure of damages, the depreciation of the rental value. We think the court was correct in its instruction. The injury, if any, was a permanent one, for which all the damages could and must have been recovered in one action. The injury was not recurring so as to permit separate actions from time to time as each separate injury occurred, and the difference in market value was therefore the correct measure of damages. *Davis* v. *Dunn*, 157 Ark. 125, 247 S. W. 793.

We conclude upon the whole that there was no error in the proceeding—that the issues were correctly submitted to the jury, and that the evidence was sufficient to support the verdict in favor of appellee.

Affirmed.

Opinion on rehearing, delivered February 21, 1927.

HART, C. J.   Upon further consideration of this case, the majority of the court is of the opinion that the motion for a rehearing should be granted.

This is an action for the assessment of damages for injury to plaintiff's property in improving a street next to her property, which is also a State highway. It is true, as stated in our former opinion, that the cost of the retaining wall is not the plaintiff's measure of damages. The record shows that the highway commissioners, in a praiseworthy effort to satisfy the plaintiff, expended about $325 in erecting a retaining wall to protect a shade tree in her yard. The record also shows that it would cost more than $2,000 to erect a retaining wall which would prevent the embankment of the plaintiff's property, abutting the improved street, from further caving in. While this proof was competent to show the damage to the plaintiff's property, it was not the measure of

her damages. In cases of this sort, the owner is entitled to recover the difference between the market value of her property before the taking or damage to it and the market value afterwards. *St. L. Ark. & Tex. Ry. Co.* v. *Allen,* 41 Ark. 431, and *St. L. I. M. & S. Ry. Co.* v. *Theo. Maxfield Co.,* 94 Ark. 135.

Every element that can fairly enter into the question of market value and which a business man of ordinary prudence would consider before purchasing the property should also be considered by the jury in arriving at the difference between the value of the property before and after the taking or damage to it. *L. R. Junction Ry.* v. *Woodruff,* 49 Ark. 381.

Tested by this rule, we think the plaintiff, under the undisputed evidence, was entitled to recover some substantial amount of damages.

Glenn D. Douglas, a civil engineer, was a witness for the plaintiff. He made a plat of her property showing the line of the embankment as it existed at the time of the survey. We quote from the abstract of the plaintiff his testimony as follows: "The upper line of the embankment is over the property line and encroaches thereon. The under line is irregular and is practically outside the line—that is, south of the property line—at least this is practically so. The embankment has caved some more since I made my survey. This soil is slate or shale with an inclination to the north of approximately forty-five degrees. The encroachment on the plaintiffs' lots by virtue of this excavation presents an irregular line and it extends onto the property from nothing to approximately two feet.

"The surface of lot 7 is from ten to twelve feet above the street level. Lot 7 is higher above the surface of the street than lot 6. The street opposite lot 7 between curbs is 40 3/10 feet. The curb is six inches on each side. The north curb of the street is from three to three and a half feet to the embankment. The north curb line which the district established is about two and

a-half feet from the plaintiff's property line.  The plaintiffs' property can be restored to them by building a retaining wall, and there is no other way whereby they can enjoy the use and benefit of their property which has been cut away.  From the nature of this soil, and due to the weather, the embankment 'will gradually slough or slide away.' ''

His testimony was corroborated by that of Mrs. Maude M. Kirk.  In addition, she stated that the embankment had caved up to the very edge of the terrace.  She testified that there is always some sloughing away, which was much more when there was a hard rain.

D. A. McCrea, one of the engineers for the road improvement district, which damaged the property, testified that the caving of the embankment was the result of blasting.  According to his testimony, it is almost impossible in digging out rock excavations to control the effect of the powder.  The reason is that the powder will follow the seams.  The average encroaching upon the plaintiff's property occasioned by the excavations is about six inches.  It might be in some places as much as a foot and six inches back of the retaining wall, which was afterwards filled in.  The retaining wall was the one which the commissioners placed around the shade tree next to the edge of the embankment abutting the street in order to protect it.

Other evidence shows that the embankment would still cave after hard rains.  Thus, it will be seen that, according to the undisputed evidence, the plaintiff suffered some substantial amount of damages, and the jury failed to award her any amount.

It is probable that the jury was misled by the instructions of the court which singled out her element of damages.  In any event, the testimony above abstracted is not contradicted at all.  It is true that the witnesses for the defendant testified that there was no difference between the market value of the property before and after the taking and damage.  But, as we

have already seen, the testimony, which we have copied above,. establishes a state of physical facts which show that the plaintiffs suffered some substantial amount of damages. It follows that the verdict of the jury was contrary to the evidence, and the judgment must be reversed, and the cause remanded for a new trial.

Justices WOOD and SMITH dissent.