ARK. STATE HIGHWAY COMM. *v.* PTAK.

5-2888                                   364 S. W. 2d 794

Opinion delivered February 18, 1963.

*Dowell Anders, H. Clay Robinson* and *Don Langston,* for appellant.

*Donald Poe,* for appellee.

CARLETON HARRIS, Chief Justice. This is an eminent domain action instituted by the State Highway Commission against Ethel M. Ptak; J. B. Hawthorne and wife, Ethel Hawthorne, and Guy W. Alexander and wife, Gladys Alexander, to acquire additional property along Highway No. 270 for highway purposes. In July, 1961, the commission filed a complaint and Declaration of Taking, depositing the sum of $50.00 for Tract No. 1 (owned by Ethel Ptak); $1,300.00 for Tract No. 2 (owned by the Hawthornes), and $500.00 for Tract No. 14 (owned by the Alexanders).[1] The Circuit Court of Scott County entered its order, giving possession of the property to the Highway Commission. On May 22 and 23, 1962, the case was tried in the Scott County Circuit Court and the jury returned the following verdicts relative to the tracts herein mentioned:

Tract No. 1, owned by Mrs. Ptak, the sum of $850.00.

Tract No. 2, owned by the Hawthornes, $8,000.00.

Tract No. 14, owned by the Alexanders, $3,000.00.

From the judgment entered on these particular tracts, the Highway Department brings this appeal. For reversal, appellant asserts that the court erred in not striking the testimony of Tiny Powell, a real estate dealer, for the reason that Powell was not qualified to give an opinion as to market value, since "(a) he did not know market value in the area, and (b) he did not know the physical facts about the property to be valued." It is likewise asserted that the court committed reversible error by permitting testimony relative to the cost of moving certain houses on Tracts No. 2 and No. 14.

Mr. Powell is in the real estate and insurance business, having been so engaged for 12 years. He is a resident of Mena,[2] owns the Midwest Realty Company, and was the only value witness called by the land owners.

---

[1] Numerous other parties and numerous tracts of land were included in the suit, but this appeal relates only to the tracts and parties mentioned.

[2] The property is located at Wye City, not a great distance from Mena.

As far as general qualifications are concerned, the witness would appear to be qualified in the field of real estate values, and probably was sufficiently familiar with market values in the area (though he did not specifically so state), but after reviewing the evidence, we agree with appellant that Mr. Powell did not seem to be well versed as to the physical facts concerning the properties herein involved.

The Hawthorne tract was composed of approximately 46 acres, and the Highway Department condemned .015 of an acre. Mr. Powell valued the entire tract at $25,000 before the taking, and $10,000 after the taking. We have held that where there is a partial taking of a land owner's property, the measure of damages is the difference between the market value of the whole land before the taking and the value of the remainder after the taking. *Arkansas State Highway Commission* v. *Fox,* 230 Ark. 287, 322 S. W. 2d 81. But the fact that Mr. Powell gave the property a before (the taking) and after (the taking) value does not, within itself, raise the testimony to that degree known as substantial evidence. As was stated in *Arkansas State Highway Commission* v. *Byars,* 221 Ark. 845, 256 S. W. 2d 738,

''There was no evidence introduced tending to prove the damages except the opinions of witnesses as to the value of the land taken and as to the market value of the properties before and after the taking. Where a witness gives his opinion as to damages, such testimony must be considered in connection with related facts upon which the opinion is based. * * * Whether there is substantial evidence to support a verdict is not a question of fact, but one of law. Because a witness testifies as to a conclusion on his part does not necessarily mean that the evidence given by him is substantial, when he has not given a satisfactory explanation of how he arrived at the conclusion.''

In *Missouri-Pacific Transportation Company* v. *Bell,* 197 Ark. 250, 122 S. W. 2d 958, we also stated that whether there is any substantial evidence to support the verdict, is a question of law and not of fact. In *St. Louis S. W. Ry.*

*Co.* v. *Brasswell, Admr.,* 198 Ark. 143, 127 S. W. 2d 637, it was stated,

"It would seem, however, that in any view to be taken, the issues are whether the evidence *is* substantial, and *who* is to judge of that quality. If this is not a question of law, then substantiality loses its significance, with the result that *any* testimony may suffice. If we acquiesce in this construction there is an abdication of judicial responsibility."

This, then, being the rule, let us look at the testimony of Mr. Powell in this case.

Relative to Tract No. 2, the Hawthorne land, the following appears in the transcript:

"Q. Now then, let's go down to the Jim Hawthorne property. That's Tract Two, Three and Seventeen. Is it your understanding that Tract Number Two includes the Jim Hawthorne houses north of the highway?

A. Yes, sir.

Q. Now on what highway was that—is Jim Hawthorne's property located on?

A. 270.

Q. And on which side of the highway is Tract Number Two?

A. My understanding is it's on the north side.

Q. Now what do you find there along the highway of Tract Number Two abutting up close to the highway?

A. I would like to ask a question here to clarify my own mind, please sir. You spoke of Tract 16, did you not?

Q. I think it is 17, Mr. Powell.

A. I probably included that in this Tract 2, if it's all on the north side. * * *

Q. How much land—do you know how much land [land taken from Tract No. 2]?

A. Only the front footage that I have and that's what I based my appraisal on was front footage. In my belief you cannot base highway values on acres.

Q. Yes, sir. Now on a front footage there will he still have the same front footage after this widening?

A. Well, I am sure, he will have the same front footage.

Q. He will still have the same length of front footage will he not?

A. Possibly.

Q. You don't know sir?

A. Well, according to the map it should be."

Tract No. 14, owned by the Alexanders was composed of approximately 30 acres, and the Highway Department condemned 0.46. Powell valued the entire tract at $15,000 before the taking, and $4,500 after the taking. Relative to the land, the testimony included:

"Q. How many acres of frontage do Mr. and Mrs. Alexander have in Tract 14?

A. From an acreage standpoint I couldn't tell you.

Q. How many feet of frontage do they have?

A. Mr. Alexander?

Q. Yes.

A. A total of 792 feet, I believe—on the south side of the highway. * * *

Q. Do you have any idea how much land the highway department is condemning from this Tract 14?

A. I didn't consider it from the standpoint of acreage.

Q. Do you know how many square feet the Highway Department has condemned?

A. No.

Q. Do you know how wide the strip is the Highway Department is condemning?

A. Yes sir, around 27 feet wide—I wouldn't be positive about that.

Q. You didn't know that the Highway Department is condemning a little less than half an acre?

A. I wasn't interested in the acreage.

Q. You didn't think that was of any importance?

A. No, the frontage involved was the thing that I was looking at. * * *

Q. On this property he has a log house. Is that correct?

A. Yes.

Q. Do you have any idea how far that log house is from the right of way?

A. From the new survey you mean?

Q. Yes sir.

A. Exact footage I couldn't say. I didn't measure it.

Q. He also has on there a chicken house, does he not?

A. Yes.

Q. And an orchard?

A. Yes sir.

Q. And a pump house and two wells?

A. Yes sir. There's two wells on the property to my knowledge.

Q. And a workshop and a garage?

A. Yes sir.

Q. All these things are still there after the taking are they not?

A. To my knowledge, yes sir.

Q. Did you know that Mr. Alexander had his property up for sale and was asking $8,500 at the time the Highway Department took the property?

A. No, I did not.

Q. Would you have given any consideration to that had you known it?

A. Pardon me?

Q. Would you have paid any attention to that if you'd known it?

A. I would have at his request.''

Tract No. 1, owned by Mrs. Ptak, was composed of approximately 2½ acres, and the Highway Department condemned .002 of an acre. Mr. Powell valued this tract at $10,000 before the taking and $1,000 after the taking. From the record:

''Q. With reference to Tract No. 1 of which Mrs. Ptak is admitted to be the owner, what would you say would be the fair market value of this particular tract of land in the condition it was in July of 1961 immediately before they enlarged the highway?

A. A minimum of $10,000.00.

Q. Now what would you say was the fair market value of this particular tract of land immediately after this highway had been enlarged and the work done there?

A. Well, I hadn't particularly noticed it until May 17 and at that time I figured it was worth $1,000.00.''

Here, an objection was interposed by the department to the effect that an appraisal is to be made on the basis of value immediately before and immediately after the taking, and Mr. Powell then testified that the value immediately after the taking in July, 1961, and May 17, 1962, was the same.

We think it apparent from the quoted testimony that the witness was not sufficiently familiar with the properties to make a proper appraisal, and that under these circumstances, his testimony cannot be considered substantial evidence. In fact, the trial court evidently strongly considered striking the testimony. Again, quoting the record,

"Q. Do you have any idea how many acres were in Tract 14 — on the south side that belonged to the Alexanders before the taking? A. No, not the acreage. I believe I stated a few minutes ago I didn't know the acreage in it. I wasn't interested in the acreage. Mr. Robinson: 'Now at this time I would like to make a motion (before the bench). I'd like to move to strike his testimony. He doesn't know the lengths involved, or how much land the Highway Department is taking. I don't see any way in the world he could appraise that property with any basis in fact at all. For that reason I move that his testimony be struck — on these three properties I have just cross examined him on.'

The Court: 'I certainly feel inclined to grant the motion. This witness has shown an absolute disregard of any sincere attempt to reach an evaluation of these properties. He acts totally indifferent except rattling off the figures without giving any basis for it. I'm going to take your motion under consideration.' "

Subsequently, however, the court denied the motion.

We think appellant's objection to the testimony was proper. Powell was not familiar with the total acreage involved before the taking, nor the acreage remaining after the taking, nor did he know how many square feet were taken. He stated that he appraised the property entirely on a frontage basis. Such an appraisal, of course, relates to only a portion of the property, and was only an additional fact to be considered in the overall appraisal. He was not familiar with the distances of the improvements from the right of way; he was not acquainted with the construction plans, and did not know the proposed status of the properties after completion of the work.

Much of the witness' testimony leaves the impression that his inspection of the premises was only casual, and in some instances it would appear that his information was acquired by means other than viewing the property. For instance, in his appraisal, he apparently combined Tracts No. 2 and No. 17 (both owned by Hawthorne) as one tract for appraisal purposes. These tracts are over a mile apart, and are separated by property owned by several different persons. When asked as to which side of the highway Tract No. 2 was located, he replied, *"My understanding* is its on the north side."

In appraising the Ptak property after the taking, Powell stated that he had not particularly noticed that property until May 17, 1962, (a few days before the trial) whereas the actual taking had occurred in July of the previous year.[3] The witness testified that the "corner has been killed", (Ptak property), meaning that the property was inaccessible at the time of the trial, but he admitted that he did not know whether it would be inaccessible when the construction had been completed: "I don't know what the planning is on it, no * * * I looked at it as I seen it — as is." Of course, on May 17, construction of the highway was in progress, and it would appear that Mr. Powell's appraisal took into consideration the disrupted condition of the land at this particular time. This was not a proper element of damage. We have held "that a municipality or other public agency, in the construction or improvement of streets, is not responsible in damages for temporary interference with the use of abutting property." *Donaghey* v. *Lincoln,* 171 Ark. 1042, 287 S. W. 407.

While two of the three land owners testified as to the before and after value of their respective properties, it is extremely doubtful that their testimony, standing alone, could meet the test of substantial evidence. Much of Mr. Hawthorne's testimony was prefaced by "I guess," and portions of Mr. Alexander's testimony were

---

[3] Powell never did testify that he made an actual appraisal of the property before July, 1961. He stated that he had been "acquainted" with the property for ten or eleven years.

likewise rather indefinite. At any rate, Mr. Powell appeared to be the principal witness for appellees, and we certainly are unable to say that the jury disregarded his testimony. We have held many times that where error is committed, and proper objection is made, such error will be treated as prejudicial unless it be shown that the appellant was not prejudiced thereby. *Equitable Discount Corp.* v. *Trotter*, 233 Ark. 270, 344 S. W. 2d 334.

Appellant's second point relates to the court's alleged error in permitting evidence relative to the cost of moving certain houses on Tracts No. 2 and No. 14. Testimony was introduced as to the cost of relocating the houses by a house mover, plumbing contractor, electrician and a carpenter. Testimony showed that the total cost of moving the Alexander house would amount to $2,719.60, and the total cost of moving several houses on the Hawthorne property was given as $3,952.80.[4] It might be first said that some of this testimony was entirely speculative and remote. An example is given by testimony of Fred Austin, an electrician. From the record:

"Q. Did you go to Jim Hawthorne's property?

A. Yes, sir.

Q. How many houses did you see there * * *

Q. Now the house south of the highway, I will ask you if this is the house that you went to which has been marked Exhibit No. 15. Is that the picture of it — that's south of the highway?

A. I believe so.

Q. Now then, what would you say was the cost of restoring the electrical appliances and wires in that house?

A. That was the one on the south side?

Q. Yes sir.

---

[4] According to Witness Powell, the highest and best use of the Hawthorne and Ptak properties was for commercial purposes.

A. That would be $85 on that one.

Q. Isn't it a fact that you only looked at three houses of Jim Hawthorne on the north side?

A. Yes, that's right. The ones on up I didn't go look at.

Q. Have you got those combined or have you separated those three houses on the north side?

A. Those on the north side I just estimated the moving of the poles and everything that it would take and then it would average out at $100 a house.

Q. A $100 on each house?

A. Yes sir, and $35 on running wire to the well if they moved the well — if a new well was drilled.''

Evidence of the cost of improvements for restoration purposes and of relocation costs is proper. *Arkansas State Highway Comm.* v. *Speck*, 230 Ark. 712, 324 S. W. 2d 796. But, as was stated in that case,

''Let it be borne in mind that these prospective expenditures are not the measure of damages, but are only an aid in determining the difference in the before and after value of the property.''

Again, in *Kirk* v. *Pulaski Road Improvement District No. 10*, 172 Ark. 1031, 391 S. W. 793, we stated,

''The record also shows that it would cost more than $2,000 to erect a retaining wall which would prevent the embankment of the plaintiff's property, abutting the improved street, from further caving in. While this proof was competent to show the damage to plaintiff's property it was not the measure of her damages. In cases of this sort, the owner is entitled to recover the difference between the market value of her property before the taking or damage to it and the market value afterwards.''

It follows that restoration costs are proper evidence, but this cost must be fairly definite, and the evidence should reasonably define the improvements or changes

that must be made, *i.e.*, the distances that the houses must be moved, etc. Actually, the testimony in this case is somewhat contradictory. Alexander testified that it was extremely doubtful that his house could be moved at all, since it was of log construction with a concrete foundation, and it would be almost impossible to move it without tearing it up. Hawthorne also testified that at least one of his houses could not be moved. The mere fact that a building is closer to the highway does not, in itself, establish damage. In fact, in some instances, benefits might accrue which would offset any damage. The land owner must show that the proximity of the highway to his house, occasioned by the taking, decreased the market value of the property, and the difference in such value before and after the taking would constitute the damage, rather than the cost of moving the house. *Mississippi State Highway Commission* v. *Smith*, 192 So. 447. Of course, if the jury should find that the cost of moving a house would call for a greater expenditure than the damage occasioned by the proximity, the land owner would only be entitled to the proximity damage.

It is apparent that the jury considered the cost of moving the houses as actual damages rather than as an aid in determining the difference in the before and after value of the property. The record reflects the following:

"(At 3:45 the Foreman of the jury came in alone and inquired of the Court and counsel, if the jury could return a verdict which included cost of moving houses and make a requirement that the houses be moved. The Court instructed them that they could not place such a requirement in this verdict.)"

For the reasons herein set out, the judgment is reversed and the cause is remanded to the Scott County Circuit Court.