**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**F. W. RAY et al., Appellees.**

Court of Appeals of Kentucky.

July 2, 1965.

Robert F. Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Dandridge F. Walton, Reed Anderson, Madisonville, for appellant.

William M. Deep, Henderson, for appellees.

CLAY, Commissioner.

The Commonwealth appeals this condemnation case on the grounds the verdict is palpably excessive and not supported by the evidence, and the court should have stricken the testimony of certain witnesses.

Appellees owned a lot on Highway 41 near Henderson, Kentucky, with a frontage of 239 feet and a depth of 276 feet. On it was located a stone-faced two-story building with a restaurant below and two apartments above. The land taken was a 10 foot strip across the front of the property. The pavement line of the rebuilt highway extends from the old right of way line onto appellees' property exactly one foot. The jury awarded appellees $9,125 for the land taken, and $2,458 for a temporary easement utilized during the reconstruction period of approximately nine months.

Three allegedly expert witnesses testified for appellees. The Commonwealth complains of these witnesses' inflated before values, but what more seriously concerns us is the lack of justification for the asserted depreciation in value of the tract as a result of the taking. Their estimates averaged about $17,000. Though asked, witness Fryer could give no factors he considered in reaching his opinion of after value. Witness Hughes could say only that

the taking of 10 feet brought the roadway nearer the building (which obviously is true) and "the remaining lot itself is a steeper grade there than it was coming off the roadway" (which, according to the photographs, appears to be inaccurate). Witness Hunt was asked the following questions and gave the following answers:

Q. "What factors did you consider in arriving at the reduction in the after value of this property?"

A. "The fact that the strip of land is being taken in front of the property and the highway is, the pavement is being moved nearer to the building, it has reduced the sight distance considerably. In other words, before the taking the building was approximately 61½ feet from the pavement, after the taking it is within 35½ feet of the pavement so when the pavement was 61½ feet from the building cars could see this place a long way down the road, but after the taking the pavement is nearer the building and the sight distance is reduced, you are on the thing before you can see it and I also took into consideration the fact that a lot of the front parking is gone, and also the part of the property that it has left; after the taking it is pretty steep from the edge of the pavement to the building where the parking area is after the taking."

Q. "And you think the Commonwealth using its own property has reduced the value of the Ray property?"

A. "No, sir, I think taking ten feet of the Ray property and moving the highway twenty-six feet nearer to the building has reduced the value of it."

These answers exhibit the improper basis upon which it is apparent the experts based their opinions and the jury awarded damages. To put it simply, the Commonwealth is paying in large part for the *utilization of its own right of way* by the extension of the highway pavement.

Before this taking the Commonwealth could have extended the pavement to its right of way line, which was 36.5 feet from appellees' building, without paying appellees a single penny. If the taking was restricted to *pavement lines*, the new pavement line encroaches only one foot on appellees' property and the damage to appellees would obviously be minimal. However, from the standpoint of taking, we are not concerned with the pavement line but with the right of way line.

The fallacy in witness Hunt's analysis is that he considered the Commonwealth was taking 26 feet of appellees' property (from the old to the new pavement line) when in fact the Commonwealth already had an easement and a right to build a roadway without paying compensation on 25 feet of these 26 feet. As is evident from this witness' testimony, and as we infer from the tenor of the testimony of the other two expert witnesses, the most substantial damage to appellees' property was the loss of the free use which appellees had of the 25 foot strip over which the Commonwealth already had an easement. In other words, as witness Hunt so well points out, the jury was led to believe that the Commonwealth was not taking a 10 foot strip but a 35 foot strip of appellees' property. This of course is requiring the Commonwealth to pay for the utilization of its own easement.

We cannot attribute much weight (if it has any validity whatever) to the loss of "sight distance" when we recognize that the taking involves only 10 feet. Witness Hunt is the only one who mentioned the loss of front parking space,[1] but the pictures (which we are holding incompetent for the purpose for which they were introduced) do not indicate this constituted a serious impairment.

---

1. Agnes Ray, an owner, only referred to it in connection with the construction work on the temporary easement.

As we have said, the expert witnesses estimated the difference in value of the property because of the taking of this 10-foot strip at an average of approximately $17,000. On the face of it this is preposterous. Apparently the jury so considered it, since it would go no higher than $9,125, but this, in the light of the evidence, is plainly excessive.

■ We now turn to the award of $2,458 for a temporary easement utilized for approximately nine months during reconstruction of the highway. The area involved was a strip 10 feet in depth for about one-half the frontage of the lot and 15 feet in depth for the remaining distance. Fixing it in terms of "reasonable rental value" or "fair market rental value" for this temporary easement, the witnesses testified to the following amounts:

| | |
|---|---|
| Agnes Ray (an owner) | $5,000 |
| Fryer | 4,500 |
| Hunt | 4,000 |
| Hughes | 3,600 |
| Grissom (the Commonwealth's expert) | 500 |

Witnesses Ray and Hughes based their opinions in large part on loss of business, a noncompensable factor; the other witnesses, including Grissom for the Commonwealth, had nothing whatever to base their opinions upon. This is perhaps more the fault of the law than the fault of the witnesses.

■ To reach the heart of the problem, we can catalogue items of damage to which the landowner is *not* entitled. The interference with the owner's use and enjoyment of property not taken, resulting from the reasonable construction operations, is not a compensable item. Commonwealth, Dept. of Highways v. Eubank, Ky., 369 S.W.2d 15; Commonwealth, Dept. of Highways v. Fister, Ky., 373 S.W.2d 720; Arkansas State Highway Commission v. Ptak, 236 Ark. 105, 364 S.W.2d 794; Blank v. Iowa State Highway Commission, 252 Iowa 1128, 109 N.W.2d 713; Lybarger v. State, Department of Roads, 177 Neb. 35, 128 N.W. 2d 132; 68 A.L.R. 340; 68 A.L.R. 1505; 98 A.L.R. 956. It follows of course that business losses resulting from construction work for which the temporary easement is utilized cannot support an award. Commonwealth, Dept. of Highways v. Fister, Ky., 373 S.W.2d 720.

■ Under these settled rules the Commonwealth is not required to compensate any property owner adjoining its right of way for injuries which flow from the necessary and reasonable construction work on the highway. The fact that the Commonwealth, in conjunction with such construction, condemns part of an owner's property by extending its right of way either permanently or temporarily does not give the owner any special right to damages for injuries caused by the construction work. Insofar as the Commonwealth creates what would constitute a nuisance if not done in the lawful exercise of its police power, the person whose property is partially taken for the extension of a right of way is not and should not be in a better complaining position than his next door neighbor whose property is not condemned.

■■ We are emphasizing these points to make it abundantly clear that the construction work itself (if necessary and reasonable) has nothing whatever to do with compensatory damages which must be paid to the property owner for the taking of his property on either a temporary or permanent basis. We must then, in attempting to fix a fair measure of damages for a temporary easement of this nature, consider the taking as nothing more than the bare occupancy of the strip of land used for construction purposes by the Commonwealth. The owner has lost dominion of this part of his property for a brief period of time and he is entitled to damages only in an amount which fairly compensates him for that loss.

■ For a temporary injury to real property (and this temporary taking must fall in the same category), the traditional meas-

ure of damages has been "the diminution of the value of the use or rental value of the property." City of Richmond v. Gentry, 136 Ky. 319, 124 S.W. 337. This constitutes a workable test when *all* of a particular tract is temporarily injured, used, or taken. It is difficult if not impossible to apply if restricted to a strip of land used temporarily in highway construction work. Such strip itself ordinarily has no market rental value because nobody would rent it. "Diminution in value of use" cannot constitute a measure because the property owner has no use of it at all.

■ In order to develop a practical measure of damages in cases of this sort, it appears necessary to consider the damaging effect of the temporary occupancy of the land upon the adjacent remainder of the landowner's property. In temporary nuisance cases it has been held that if the property is occupied by the owner, the measure is the diminution in the value of the use, and if not occupied by him, it is the reduction in rental value. Adams Construction Co. v. Bentley, Ky., 335 S.W.2d 912. We do not think occupancy or nonoccupancy by the owner is of any significance in fixing damages for a temporary highway construction easement. Combining the two criteria appears more practically workable. A proper standard is the *diminution in the fair rental value* of the landowner's adjacent property by reason of the occupancy by the Commonwealth. If the part occupied has some material relevancy to the use of the overall premises, its temporary loss may cause a substantial depreciation in rental value. On the other hand (and perhaps in most cases), the temporary loss of an unused strip of land would not materially affect the fair rental value of the remaining property and the damages would be no more than nominal. See Community Public Service Co. v. Northcutt, 272 Ky. 494, 114 S.W.2d 729.

■ If the temporary occupancy resulted in the destruction of trees, shrubs, buildings or other improvements, or a permanent injurious change in topography,[2] this would constitute a taking and properly could be considered as effecting the after value of the remaining property. The impairment of some special use of the strip occupied, if such use can be re-established at the termination of a temporary easement, would be reflected in the diminution of the fair rental value. Such impairment in a special use of the occupied strip was suggested in the present case as arising from the loss of parking space. This loss (if it existed) was not in any way related by the witnesses to the rental value of appellees' property. The proof in the case would have justified no more than an award of nominal damages.

It is therefore obvious that the allowance of $2,458 for this temporary easement was not based on any evidence of substance and is patently excessive. We have been advised that in some cases the Commonwealth and the property owners have stipulated a reasonable rent for the use of a temporary easement of this kind and we think the practice should be encouraged.

■ One more question requires comment to insure against error on a new trial. The Commonwealth moved to strike the testimony of two witnesses because their value estimates were based upon the owners' loss of business (principally during the period of reconstruction). This case was tried before own decision in Commonwealth, Dept. of Highways v. Fister, Ky., 373 S.W.2d 720, and perhaps if the court and the parties had had that case before them, the question would not have arisen. Without passing upon the motion to strike, we will again point out that business losses as such are not compensable items or factors of damage either with respect to the land taken or the temporary easement.

2. See Commonwealth, Dept. of Highways v. Givens Bros., Ky. (decided June 25, 1965).

We will make two further observations. Under the Fister case the owner, Agnes Ray, was not qualified to express an opinion on valuation. Also under the Fister case the photographs of the construction work were not admissible for the purpose of showing the disruption of appellees' business. These photographs would perhaps be admissible to show new pavement lines and the permanent physical conditions affecting the property when the reconstructed highway was completed, but if admitted for a legitimate purpose the court should admonish the jury that the disruption of the highway in front of appellees' premises cannot be considered in their award of damages.

The judgment is reversed for consistent proceedings.