## ARKANSAS STATE HIGHWAY COMM'N v. MARTHA P. DARR

5-5248                           453 S. W. 2d 719

Opinion delivered May 18, 1970

*Thomas Keys* and *Kenneth Brock*, for appellant.

*Laws & Schultze* and *Phil Loh*, for appellee.

CARLETON HARRIS, Chief Justice. This is a highway condemnation case, and is a second appeal. The lands in question, belonging to Mrs. Martha P. Darr, were condemned by the Arkansas Highway Commission, appellant herein, on September 29, 1966. Taking was for the purpose of constructing a controlled-access interstate highway, and the condemned property was designated by appellant as Tract No. 225, which consisted of 9.55 acres. The entire property owned by Mrs. Darr before the taking consisted of approximately 280 acres and was used for farming purposes. After the taking,

the remaining lands consisted of 6.6 acres lying generally south of the new highway and 263.85 acres lying north of the new highway. Robert Darr, son of appellee, testified to total damages of $84,955.00. Jackson Ross, an expert witness on behalf of Mrs. Darr, found damages to be $71,125.00, and Hobart Yarbrough, another expert witness, testified that damages amounted to $77,955.00. Mr. Zack L. Mashburn, testifying on behalf of the highway department, found damages to be $23,500.00, and Mr. Kenneth McMurrough, another expert witness on behalf of appellants, assessed damages at $22,750.00. On trial, the jury returned a verdict in the amount of $60,000.00, and from this judgment, appellant brings this appeal. For reversal, two points are asserted. First, "The trial court erred in allowing appellee's witness, Tom Scott, to testify as to costs of building a road into appellee's remaining lands north of the interstate". It is then asserted that the judgment of $60,000.00 is not supported by substantial evidence. We proceed to a discussion of each point.

Prior to the condemnation, appellee had access to the farm from a public road, but after the taking, there is no access to the 263.85 acres lying north of the highway except by travelling over property belonging to other persons. At present, access is being afforded by travelling over land belonging to the Robinson brothers, Robert Darr, a son of appellee, explaining that the person who has leased the Darr farm is also farming the Robinson brothers property, and permission was granted for use of the turn row.[1] Evidence offered by appellee was to the effect that a road will have to be built in order to obtain access to the main body of the farm.

Judge Tom Scott, County Judge of Conway County, testified with reference to the cost of such a road. He first testified that the road presently utilized is not a public road and even has a sign saying "Keep Out".

[1] There are really two ways of entering the property, one by utilizing the farm turn row, and the other by crossing over land belonging to a neighbor, Mr. Carruthers.

After testifying as to the most feasible place to locate a road, the judge gave an estimate of the cost involved, stating that the proposed road would be comparable to the public road used before the condemnation, except that it would be longer. He first testified that about a one foot rise would be necessary for the fill, that it would be a gravel road, giving figures for the amount of gravel, the cost of ditching, a bridge or ramp over a canal, the type of tile to be used, and dirt compaction; the total estimate for the building of the road was $25,528.86. Appellant objected to this evidence, but the objection was overruled. Judge Scott was then asked if his figures included any right-of-way costs to be paid to the landowner over whose property the road would be built, and he answered that it did not.

In *Arkansas State Highway Commission* v. *Ptak,* 236 Ark. 105, 364 S. W. 2d 794, we stated that restoration costs are proper evidence, but the costs must be fairly definite and the testimony shall reasonably define the improvements or changes to be made. Of course, this evidence is only admissible as an aid to the jury in determining the difference in the before and after value of the property. *Arkansas State Highway Commission* v. *Speck,* 230 Ark. 712, 324 S. W. 2d 796. Appellant says that construction costs, as testified to by Judge Scott, were not fairly definite inasmuch as his figures did not include right-of-way cost, and this important matter was left for the jury's speculation.

In the first place, there is no objection by appellant's counsel to this question. There were several objections to the introduction of Scott's figures, but though the additional right-of-way over private land was mentioned several times, these specific questions or answers thereto were not objected to. There is thus no occasion for us to further consider or discuss this point, though offhand it appears doubtful that it contains merit.

Nor do we agree that the verdict was not support-

ed by substantial evidence. The landowner did not testify, but appellee offered the testimony of her son, Robert Darr, who is a licensed real estate broker working for Merle Lemley Realty Co. of Russellville, Jackson Ross, an expert land appraiser, and Hobart Yarbrough, also offered as an expert witness by Mrs. Darr.

Robert Darr, in his testimony, demonstrated a familiarity with the Darr farm, testifying as to the type of soil, and stating the farm was principally used for the production of soy beans. He said that between 28 and 30 bushels of beans were produced per acre, and the rent was one-fourth of the gross of the bean crop. Darr was familiar with the boundaries of the property, elevations, access to the farm, and he testified that in arriving at the amount of damages, he took into consideration the reduction in the overall size of the farming unit, the division of the farm into two separate distinct parts, and the lack of access, after the taking, to the main body of the farm property. Though Darr did not profess to be an expert, and, for that matter, could not qualify in that capacity, his testimony was impressive mainly because of an evident familiarity and knowledge of the property.

Mr. Ross, who has testified in numerous highway condemnation cases, testified that he inspected the property, noted its location, and then made a study of the market. He mentioned that before the taking, one could drive to the farm off Highway No. 64, but that after the taking, Highway No. 64 only afforded access to 6 acres. He said the 6 acre tract could be utilized for a homesite, and the 263 acres on the north would still be agricultural land. Mr. Ross mentioned two sales of farms that he considered comparable to the Darr property, comparing location and production. Mr. Yarbrough also mentioned the sales referred to by Ross.

Appellant says that the sales mentioned were not comparable because of the difference in the type of

soil in those farms and the Darr farm and appellant's experts mentioned two different sales that they considered comparable. These witnesses, both for appellee and the department, gave their views, the reasons for those views, and presented questions of fact which could only properly be determined by the jury.

One of appellant's principal arguments relates to the testimony of appellee's witnesses concerning the lack of public access to the main farm. It is pointed out, that at the date of trial, nearly three years after the date of taking, permissive access had been obtained to the property; the land had been farmed during this period; the landowner was getting the same percentage of crop rent from the farm; but the landowner had apparently taken no steps to arrange for any type of permanent access to the area in question. Appellant says that a landowner is under a duty to mitigate his damages. We have so held. See *Arkansas State Highway Commission* v. *Dean,* 244 Ark. 405, 425 S. W. 2d 306. But, we do not know what really is meant when appellant complains "no steps had been taken by the landowner to arrange for any type of permanent access to this area in question". Appellee is presently only able to reach her land through the generosity of neighbors, and the access through the Robinson brothers property seemed to have been acquired because the same tenant who had leased the Darr farm also operated the Robinson farm. Does appellant mean that appellee should approach these neighbors as a matter of getting them to agree to continue to afford her a passageway? Does the commission expect her to acquire this *gratis*? Should she be forced to depend upon maintaining the goodwill of these neighbors in order to reach her property? What happens when these adjoining owners' properties are sold, or ownership is changed by death? While the law requires that a landowner mitigate his damages, there certainly is no requirement that one accept a makeshift arrangement in lieu of a permanent solution. Of course, it is not likely that either neighbor would convey a permanent easement to appellee, with-

out charge; for that matter, they might not be willing to convey an easement at all. Yet, if Mrs. Darr had obtained such an easement for a consideration of several thousand dollars, it possibly could have been urged by the condemnor that she paid too much, and was not entitled to include such an amount as restoration costs. Zack Mashburn, an appraiser for the Highway Commission, was asked what, in his opinion, it would cost Mrs. Darr to condemn a right-of-way across two 40's belonging to Mr. Carruthers in order to reach her property. He answered, "I'm not able to tell you what it would cost a private owner. A private owner is different entirely from a public—from the Highway Department." When asked if the Highway Department could take from a private owner, Mashburn replied, "Yes, but it's entirely different when one private person buys right-of-way for a road from another private party, especially if they're neighbors." Further, "Well, I don't think—I don't think that getting the right-of-way for private—for easement for roads is too expensive." Nor would Mr. Mashburn comment on what it might cost if condemnation proceedings had to be utilized in order to obtain a right-of-way.

Summarizing, restoration costs were proper for the jury to consider in determining the difference in the before and after value of the property. We think the evidence offered by appellee constituted substantial evidence. It is true that damages found by the appraisers on behalf of the landowner were considerably higher than the appraisals of those who testified on behalf of the commission. However, this is nearly always true, and as we have stated many times, conflicts in the evidence are a matter for jury determination.

Affirmed.