RENDERED: JUNE 5, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0216-MR

FIELD & MAIN BANK, INC. F/K/A
OHIO VALLEY FINANCIAL GROUP,
INC., SUCCESSOR BY MERGER
AND F/K/A OHIO VALLEY BANK,
INC., SUCCESSOR BY
CONVERSION TO OHIO VALLEY
NATIONAL BANK OF HENDERSON                                        APPELLANT


                         APPEAL FROM HENDERSON CIRCUIT COURT
v.                       HONORABLE KAREN LYNN WILSON, JUDGE
                         ACTION NO. 21-CI-00688


COMMONWEALTH OF KENTUCKY,
TRANSPORTATION CABINET,
DEPARTMENT OF HIGHWAYS                                             APPELLEE


                         OPINION DISMISSING APPEAL
                         AND REMANDING

                         ** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE: This highway condemnation case presents two important,

procedural questions of first impression. The first question is what the proper

procedure is when the condemnor ultimately decides to take a lesser interest after the right to take the property has been determined. Appellant challenges a Henderson Circuit Court decision granting Appellee's motion to amend its condemnation petition years after the circuit court entered the appealable (but not appealed) Interlocutory Order and Judgment (IOJ). The amendment changed a small portion of the property affected, reducing the taking from a fee simple interest to a temporary easement. The Appellant insists that this change was made in bad faith and that the circuit court erred in not granting an evidentiary hearing on its challenge to the amendment. After review of the record and applicable law, we conclude that the law required the change and that no new hearing was justified.

The second question is what the proper procedure is when a condemnee claims an inverse taking has occurred, not because of the property which is the subject of the petition, but because of traffic flow changes from the larger project involving other properties. The Appellant here believes that it has lost reasonable access to its property and should be commensurately compensated. We conclude that the condemnee may assert this as a counterclaim. In these circumstances, we dismiss[1] this appeal and remand for the determination of the fair

_____

[1] A motion panel of this Court previously denied a motion to dismiss this appeal. "This Court retains authority to review decisions on motion panel that do not finally dispose of the case when the case is considered by a full-judge panel to which it is assigned." *Commonwealth Bank &*

rental value of the temporary easement ultimately taken as a result of the petition and for further proceedings to address the inverse condemnation claim.

## FACTUAL AND PROCEDURAL HISTORY

Appellee, the Kentucky Transportation Cabinet, Department of Highways (KYTC) filed a Petition for Condemnation of property owned by Appellant Field & Main Bank (Bank). This condemnation is part of a project to design a new interchange between KY 351 and the former US 41 in downtown Henderson. That project is then part of a larger project to complete the gap between the northern and southern sections of I-69 and includes building a bridge across the Ohio River. This section of US 41 essentially becomes part of a new section of I-69. As it may impact Bank, the work has been completed and the roads as reconfigured are operational.

Bank's complaint focuses on how the project changes access from KY 351. KY 351 is known as Zion Road as it enters Henderson and then becomes 2nd Street as one heads toward the Ohio River. Bank has a drive-thru branch at 1720 2nd Street, and this is the property at issue.

The overall project design involves three roundabouts on KY 351. The first two roundabouts as one heads toward the Ohio River and approaches

---

*Trust Co. v. Young*, 361 S.W.3d 344, 350 (Ky. App. 2012). The issues presented here justified further briefing and oral argument to determine if dismissal of the appeal was proper and to determine the parameters of remand.

Bank's branch serve to provide access to I-69 (formerly US 41 at that location). The last roundabout is to the right on 2nd Street as one faces that street from the front of Bank's branch. The impact of these roundabouts is that the new traffic pattern prohibits a left turn across 2nd Street to get into Bank property. But Bank customers apparently still have access by turning right from 2nd Street and by turning left onto Franklin Street with a cut-through back to Bank's 2nd Street property.

The location of the last roundabout barely touched Bank's property. What was needed most was a relatively small temporary easement for the construction, but KYTC did originally seek 82 square feet in fee simple in addition to 657 square feet as a temporary easement. Considering the attraction basketball has in this Commonwealth, the parties offer the dimensions of 82 square feet as equivalent to one-third the size of a standard free-throw lane on a basketball court. It might also be described as just about one-half of a single, standard parking lot space. Literally, the fee parcel was just the very tip of a corner of Bank's lot. This tip was not being utilized in any way by Bank and the temporary or permanent taking of this tip itself in no way impacted Bank's access to its property.

The court-appointed commissioners determined a total award of $1,900.00. Despite this assessment, KYTC voluntarily paid $5,800.00 into court. Bank did not object to the right to take but did not like the highway design and its

-4-

impact on access for its customers. It wanted to be heard by KYTC, including input on details of the work to be done.[2]

And Bank clearly took exception to the amount of compensation offered. In March 2022, the trial court entered the IOJ, ruling that KYTC had the right to condemn the property and allowing it to take possession. Both parties filed exceptions as to compensation, and the case eventually proceeded to mediation in an unsuccessful effort to resolve the compensation issue.

After the mediation, KYTC redesigned the interchange to take none of Bank's property in fee and filed a Motion to Amend its Petition to take all 739 square feet only as a temporary easement. The circuit court received briefs and heard arguments before entering an order without conducting an evidentiary hearing on Bank's challenge to the amended actual taking. The trial court granted KYTC's motion, and the commissioners, after resubmission to them for a new valuation, returned a value of $2,145.00. This appeal followed. All issues have been properly preserved, and the parties' respective briefs comply with the Kentucky Rules of Appellate Procedure (RAP).

---

[2] While it might be expected that those who take property would consider construction-related concerns of those whose property has been taken and try to work with them, the property owner has no right to *dictate* any terms of the construction process. *See Allard v. Big Rivers Electric Corporation*, 602 S.W.3d 800 (Ky. App. 2020). A recent addition as Kentucky Revised Statute (KRS) 416.610(2)(e) requires consideration of access during construction.

## STANDARD OF REVIEW

Ultimately, this appeal turns on the propriety of the amendment of the petition. CR[3] 15.01 provides that a party may amend his pleading by leave of court and such leave "shall be freely given when justice so requires." "While liberality in granting leave to amend is desirable, the application is addressed to the sound discretion of the trial judge. [If] abuse of discretion is not shown clearly, the action of the trial judge will not be disturbed." *Bradford v. Billington*, 299 S.W.2d 601, 603 (Ky. 1957) (citations omitted).

The propriety of the amendment in this case is determined by the authority of KYTC in making condemnation decisions. "Generally, the condemning body has broad discretion in exercising its eminent domain authority including the amount of land to be taken." *God's Center Foundation, Inc. v. Lexington Fayette Urban County Government*, 125 S.W.3d 295, 299 (Ky. App. 2002). The courts will not interfere with a decision as to what property needs to be taken unless "there has been such a clear and gross abuse of discretion as to violate Section 2 of the Constitution of Kentucky, which section is a guaranty against the exercise of arbitrary power." *KYTC v. Vandertoll*, 388 S.W.2d 358, 360 (Ky. 1964).

---

[3] Kentucky Rules of Civil Procedure.

**ANALYSIS**

A review of the law applicable to condemnation actions is essential in determining whether the amendment was proper. Section 13 of the Kentucky Constitution provides that private property may be taken only for public use, and just compensation[4] must be paid for what is taken. Section 242 of that same Constitution then creates a permissible process where possession of the land involved may be taken after the right to take it has been determined, if payment of compensation as initially set by commissioners has been secured. As previously noted, Section 2 of our Constitution also applies because the government may not exercise its powers in an arbitrary manner.

The Eminent Domain Act of Kentucky (1976) (KRS 416.540 to 416.680) proceeds from these constitutional guarantees. KRS 416.550 contains two important provisions. First, the property to be taken must be "needed" for the project. "Under KRS 416.550 the condemnor cannot acquire the property in fee simple if it can obtain access or use of the property through other privileges or easements." *City of Bowling Green v. Cooksey*, 858 S.W.2d 190, 192 (Ky App. 1992). "[W]hen a governmental unit needs to take a small area out of a larger

---

[4] "Just compensation means a compensation that would be just in regard to the public, as well as in regard to the individual." *Sherrod*, *infra*, at 854 (internal quotation marks and citation omitted).

estate, it should take the least possible interest, such as an easement, so that if the public purpose for the tract is concluded, it may be reintegrated into the original estate unburdened by the prior public taking." *Lexington-Fayette Urban County Government v. Moore*, 559 S.W.3d 374, 381 (Ky. 2018).

Second, a condemnation action may not proceed unless it is shown that the property could not be obtained by reasonable agreement. Public policy demands that the party seeking to condemn property has exercised good faith in trying to buy the property. *God's Center Foundation*, 125 S.W.3d at 300.

An answer to a condemnation petition is "confined solely to the question of the right of the petitioner to condemn the property sought to be condemned[.]" KRS 416.600. The court then determines if the party seeking the property has the right to take it for a public use. If so, then *possession* is granted for the purposes of that use. KRS 416.610. A property owner can appeal the right to take decision before possession is given and before compensation is decided. A property owner may file exceptions on the separate issue of compensation. Ultimately, disputed value is determined by a jury. KRS 416.620.

KRS 416.660 makes it clear that the compensation for a fee interest taken is to be measured only by the difference between the fair market value of the property as a whole and the value of the property without the part taken.

Compensation for temporary easements is limited to the fair rental value of the land subject to such easements.

The 1976 act reflected a body of caselaw, much of which developed in the 1960's – a busy time for the building of highway infrastructure, both nationally and locally. It is important to understand that body of law. The seminal case during this time was *KYTC v. Sherrod*, 367 S.W.2d 844 (Ky. 1963). In that case, our former Court of Appeals abolished the separate concepts of taking and resulting damages. Loss of business and expense for inconvenience are not compensable. The *only* recovery is the difference in fair market value. *Id*. at 857-58. In cases of temporary easements, the *only* compensation is the fair rental value. *KYTC v. Ray*, 392 S.W.2d 665, 669 (Ky. 1965).

This is sound public policy. As this Court has said: "Neighborhoods, traffic patterns, safety requirements, and the like change over time, and governments must not always be required to compensate a property owner for every inconvenience or loss of business." *KYTC v. Comer*, 824 S.W.2d 881, 884 (Ky. App. 1991).

The crux of Bank's claim is the overall change in access to their property, not the impact of the taking or use of the small corner of its property. We return to *Comer*, which we note was an inverse condemnation claim:

> It is well-settled law in Kentucky that reasonable
> restriction of access, rerouting of public highways, and

> circuity of travel caused thereby are not legally
> compensable.  Clearly, governments must have the
> authority to grant or deny parking on streets, establish
> one-way traffic, allow or deny curb-cuts and driveways,
> erect dividers and safety barriers in streets, and other
> such things to improve traffic flow and safety.

*Comer*, 824 S.W.2d at 883 (citation omitted).

We could cite and discuss a dozen cases on the point that alteration of access to a property is not compensable.  A leading case on the subject which cites many others and has been cited with approval since is *KYTC v. Carlisle*, 442 S.W.2d 294 (Ky. 1969).  Only reasonable access is required.  If reasonable access remains, then no compensation is owed for any degree of change in access whether by a direct taking of property or an indirect inverse condemnation.

"The question of whether the landowner has been deprived of reasonable access is a question of law which should be resolved by the court." *Gibson v. KYTC*, 777 S.W.2d 234, 235 (Ky. App. 1989).  Any lessening in that access because of the new traffic patterns is not compensable.  Not only is it not compensable as a separate item, but it is also not permitted to be considered as a factor in evaluating the difference in fair market value.  *KYTC v. Denny*, 385 S.W.2d 776, 778 (Ky. 1964).

In the present case, there can be no question that Bank still has reasonable access to its property *if* we consider only the part of its property actually the subject of KYTC's petition.  After we further address the procedure

-10-

for the amendment to take less of the property, we will return to the question of procedure for Bank's essentially inverse condemnation claim.

Against this legal backdrop, Bank raises two issues about the amendment. The first issue is whether the trial court erred in granting KYTC's leave to amend its petition from a taking in fee simple to a taking as a temporary easement, more than two years after the original IOJ was entered, after construction was complete, and compensation negotiations had failed. The second related issue is whether the trial court erred in denying Bank an evidentiary hearing on the Amended Petition to assess bad faith. We find no error in either decision of the trial court for reasons set forth below.

CR 15.01 provides that a party may amend his pleading once as a matter of course at any time before a responsive pleading is served, or by leave of court. The rule further provides that such leave "shall be freely given when justice so requires." Keeping in mind this overarching principle, this Court has recently summarized considerations for allowing an amendment. Factors include "'timeliness, excuse for delay, and prejudice to the opposite party[,]' . . . as well as 'failure to cure deficiencies by amendment or the futility of the amendment itself.'" *Hernandez v. County Investments, LLC*, 696 S.W.3d 832, 839 (Ky. App. 2024) (citations omitted). Timeliness alone is not enough of a reason to deny an amendment. *Id.*

-11-

Bank argues that KYTC's request for leave to amend was untimely. At first blush, it might appear to be because it was years after the right to take had been decided. But this takes the question out of context. The condemnation process starts with a *right* to take followed by possession. The taking process is not completed until compensation is decided. What is eventually, finally taken is a matter for the compensation part of the equation. An adjustment to what compensation may be owed is not untimely before compensation has been determined by the jury.

KYTC has a right to change its plans, and the change of plans may be considered in the assessment of damages. "[T]he Commonwealth is not obligated to build according to its original plans or to build at all." *KYTC v. King*, 375 S.W.2d 688, 690 (Ky. 1964) (error not to allow Commonwealth to provide evidence during the compensation trial of changed plans which provided added drainage facilities). Indeed, the law gives the condemnor eight years to proceed if it chooses to do so. KRS 416.670(1).

As a project progresses, anticipated or even unforeseen complications may cause an adjustment to the overall project and thus the need for portions of individual property actually taken. "Problems of necessity, proper design, but [*sic*] utilization of adjoining properties, convenience to the public, saving of expense, and promotion of traffic safety are matters which must be left to the discretion of

-12-

the highway authorities." *Sturgill v. KYTC*, 384 S.W.2d 89, 91 (Ky. 1964). *See also* KRS 177.020(2) and KRS 177.240.

As a result of the IOJ, KYTC had the *right* to take a fee simple interest in this half-parking-space-sized area. To understand the significance of this, we attorneys return to the first year of law school. When property law is introduced to students, ownership of property is conceptually explained as a bundle of rights or a bundle of sticks representing all the various interests in the property. Fee simple absolute is the whole bundle. Easements are just one stick in the bundle. This concept comes from the legal scholar, Wesley Newcomb Hohfeld,[5] a professor at Stanford Law School.

When Bank did not challenge KYTC's right to a fee simple interest in these 82 square feet, then it also did not object to the taking of any part of that bundle of sticks. Bank was obligated to appeal when the IOJ was entered, if it had any objection to the taking of any part of the 82 square feet.

After considering Bank's challenge to KYTC's amended petition, the trial court correctly determined that an IOJ is about the right to take, not about what is ultimately taken. And because Bank failed to challenge this determination within thirty days of entry of the IOJ, it lost the right to appeal the right to take.

---

[5] The law lost the potential further contributions of Professor Hohfeld because he died at a young age during the Spanish Influenza pandemic in 1918.

*See Hagg v. Kentucky Utilities Co.*, 660 S.W.2d 680, 681-82 (Ky. App. 1983). The statement of no objection to the taking with no appeal of the right to take the fee simple interest also satisfies the elements of judicial estoppel in these circumstances. *See Hisle v. Lexington-Fayette Urban County Government*, 258 S.W.3d 422, 434-35 (Ky. App. 2008).

Once an interlocutory judgment establishes the *right* to take, this determination is final and immediately appealable. A later amendment that *lessens* the interest affects only compensation and does not reopen the right to take phase. Here, the right to take had long been established, construction had been completed, and the Amended Petition and resulting order lessening the interest taken did not revive the opportunity to challenge the right to take or serve as a basis to restart the appeal process.

In a case involving the Commonwealth's amendment of its original petition in a highway condemnation action, wherein the original petition erroneously described property and the amount of acreage actually taken, the Kentucky Supreme Court determined that it was an abuse of discretion to deny the amendment. *Hamilton v. KYTC*, 799 S.W.2d 39 (Ky. 1990). *Hamilton* is distinguishable on its facts, but its general holding still applies. Any change which

does not *increase*[6] what is taken is a matter for the compensation stage because the interlocutory judgment is final only as to the right to take and enter. *Id.* at 41.

Here, as contrasted with *Hamilton*, KYTC did not erroneously request initially a fee simple interest in the subject 82 square feet portion of land, but instead it changed the highway design in such a way that a permanent interest was no longer required. Whether correcting the legal description of property to be taken or taking a lesser possessory interest in real estate after modification of a public highway design, these issues concern "just compensation" and not the "right to take."

In these circumstances, KYTC sought timely leave to amend its petition once it concluded that a minor adjustment to the highway design could reduce its necessary ownership interest in any of Bank's property. We can find no prejudice to Bank in retaining permanent ownership interest in its own land. It still has a right to obtain full and legally allowed compensation for what is finally taken.

Still, Bank argues that KYTC's amended petition changed the nature of the taking from fee simple to something less, which should reopen the window to challenge the amended taking. At a minimum, Bank thinks it should be entitled

---

[6] We note that KYTC basically concedes that the same may not be said if a condemnor decided it needed a *greater* interest in the property identified or more property. This would require another taking evaluation, and that question is not presented in this case.

to a hearing on that change. Bank believes that to hold otherwise would incentivize landowners to challenge every taking initially to prevent the government from unilaterally changing the taking down the road in a manner that is "harmful" to the landowner.

Such a belated argument about the right to take *less* would indicate, if anything, bad faith by the landowner. The landowner has no right to make the condemnor take more than is needed. Taking less is not harmful, unless the landowner simply wants to improperly receive more money from the government by making it buy land it does not need.

The Kentucky Supreme Court in *Moore* specifically rejected the landowner's attempt to force the Commonwealth to take property in fee simple instead of a permanent easement. Under the reasoning of *Moore*, as applied to the facts of this case, Bank cannot force KYTC to take a greater interest in the land than is necessary.

One could argue that an amendment was not required, but the better practice would be to put the pleadings in order before the compensation trial takes place. CR 15.01 provided the proper mechanism by which KYTC could seek amendment of its petition to reflect a lesser interest in the exact same area of land as described in the original petition. The amendment cured an unnecessary level of taking. It was in no way futile. Ultimately, compliance with the law to take only

what is needed demanded the amendment. In other words, "justice (adherence to the law) so requires."

Frustrated with Bank's compensation demands and near the end of the construction, KYTC figured out how to make a very slight adjustment to take no fee interest. Regardless of its motivation, the law required KYTC to take less if possible. A decision to comply with the law to take less cannot be an exercise of bad faith as the law applies that concept to initial negotiation before beginning a condemnation action. Later adjustments to designs in large-scale highway projects are not uncommon. This type of adjustment to take less should not only be permitted but encouraged, not punished.

When KYTC decided to take less, it could amend the petition to indicate this decision. The amendment does not actually alter the IOJ. The IOJ simply determined the *right* to take. KYTC had a right to take the fee interest or the lesser temporary easement interest. The change impacted only compensation.

An amendment which does not *increase* an interest in property taken prior to the compensation trial does not result in a newly appealable order. Such an order merely impacts the compensation process yet to be completed. To hold otherwise would encourage needless delay in the process with another appeal, delaying finality through completion of the compensation part of the process.

That part of the equation is subject to a separate appeal process after completion of the case. The order allowing the amendment was not an appealable order. For these reasons, we will dismiss this appeal. But the record before us presents challenges for the remand of this case for its completion.

We finally can get to the real problem Bank has with this situation. Bank's contention has always focused on compensation, and that has almost nothing to do with the small sliver of land which is the subject of KYTC's petition. Bank's real claim is one for inverse condemnation. So, now we must address how such a claim may be properly made in this case.

Before we move on to this issue, we take a moment to note the mention of HB[7] 542 during the oral arguments in this case. Among other things, this new law specifies process for the pre-litigation attempt to purchase property before the condemnor may file suit. While HB 542 was enacted with effective date of April 13, 2026, it has no application to this case. It was not made retroactive by the General Assembly. *See Commonwealth, Dep't of Agriculture v. Vinson*, 30 S.W.3d 162, 168 (Ky 2000) (citing KRS 446.080(3)). "[T]he legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place[.]" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Still, it would behoove any practitioner in the field of condemnation to carefully study the

---

[7] House Bill filed with the Kentucky General Assembly in its 2026 regular session.

-18-

changes brought about by this bill, especially the changes to KRS 416.550 and KRS 416.560.

When a condemnee believes the overall project has caused an inverse taking, what is the proper procedure to make this claim? We will start with what Bank had actually said in its pleadings. In its Answer, Bank claimed its rights, including just compensation and the right to file further pleadings. Specifically, Bank claimed a deprivation of its right to reasonable access.[8] These claims were restated when KYTC filed its Amended Petition.[9] In its exceptions filed, Bank stated that what KYTC had done "constitutes a total taking."[10]

Bank did not file a counterclaim or a separate suit to be consolidated for the purposes of compensation. Where does that leave Bank as we remand this case for further proceedings about compensation? One problem is that the statute of limitations for an inverse condemnation claim is five years. KRS 413.120.

As we stated earlier, the answer filed in a condemnation case is limited to the right to take the property which the condemnor is seeking in the petition, but KRS 416.590 also envisions "an answer or other pleading." And all proceedings "shall be governed by the provisions of the Rules of Civil Procedure

---

[8] Trial Record (TR) at 37-38.

[9] TR at 235.

[10] TR at 89.

except where the provisions of KRS 416.550 to 416.670 specifically or by necessary implication provide otherwise." KRS 416.650.

A counterclaim has been allowed in a condemnation proceeding. *Bianchi v. City of Harlan*, 274 S.W.3d 368 (Ky. 2008). This Court has also recently ruled that a counterclaim was unnecessary when the claim of loss of access resulted from the loss of the property actually taken as a result of the petition. *Bowling v. KYTC*, No. 2024-CA-1361-MR, 2025 WL 3558691 (Ky. App. Dec. 12, 2025). That was just a matter for compensation. But here the loss of access is from alterations to other property in the vicinity.

KYTC and Bank have both presented alternative "parades of horribles" however we rule on their competing arguments. KYTC in particular suggests that everyone will file counterclaims for inverse condemnation in every case. If they do so improperly, they will face CR 11 sanctions. But, in the unique circumstances of the present case, Bank may actually have a claim for inverse condemnation because of the overall effect of the project on its property.

On remand, the circuit court will have to move this case forward to the compensation determination. That court may be called upon to determine whether an omitted counterclaim should be allowed under CR 13.08. In this analysis, the fact that Bank has consistently argued about a total taking shows that KYTC has clearly had notice of the claim. If justice requires the amendment to the

-20-

KYTC's petition, then justice may require an amendment to the pleadings on the other side of the case too. We do not decide this. This should be thoroughly evaluated by the circuit court.

In making this evaluation, the circuit court is reminded of how futility may impact the decision about allowing a counterclaim at this point. The question of reasonable access has not yet been decided by the circuit court, and this is a legal question. The parties should have the opportunity to present evidence and arguments on this issue before that decision is made. But the standard is the same for condemnation or inverse condemnation. The level of impairment of access necessary to show a "total loss" (to use Bank's wording) is a high burden. If Bank cannot make that showing, an amended or new pleading would be futile. Still, the claim about reasonable access has to be evaluated, one way or the other, before the compensation aspect of this case can finally proceed.

**CONCLUSION**

Finding no errors in the Order granting Appellee KYTC's Motion to Amend and no error in the failure to hold an evidentiary hearing on the issue of the right to take under the Amended Petition, this appeal is DISMISSED, and the case is REMANDED for jury trial on the issue of compensation. On remand, the circuit court must determine whether any further amendment or new pleadings will be allowed. In any event, the question of lack of reasonable access must be evaluated

-21-

as a matter of law.  If that issue does not survive for evaluating compensation, the trial in this matter is limited to the fair rental value of the small temporary easement taken as a result of the petition.

ALL CONCUR.

BRIEFS FOR APPELLANT:

G. Michael Schopmeyer
Patrick C. Thomas
Evansville, Indiana

Jon A. Woodall
Lexington, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

Kerry D. Smith
Paducah, Kentucky

ORAL ARGUMENT FOR APPELLANT:

John A. Woodall
Lexington, Kentucky