PULASKI COUNTY *v.* HORTON.

5-640                                                    276 S. W. 2d 706

Opinion delivered March 28, 1955.

*Frank Holt, John T. Jernigan* and *William H. Donham,* for appellant.

*L. A. Hardin,* for appellee.

Minor W. Millwee, Justice. Appellees, J. M. Horton and J. F. Head, each own three lots upon which they reside at the intersection of West 36th street and Barrow Road in the John Barrow Addition to Pulaski County, Arkansas. Head's home is combined with a store which he operates on the southwest corner of the intersection while Horton's property is directly across Barrow Road on the southeast corner. In March, 1953, the Pulaski County Court entered an order providing for acquisition of rights-of-way for the purpose of widening and black-topping Barrow Road as a farm-to-market project and the work was begun in May, 1953. The improvement entailed considerable grading and changes in drainage structures in the vicinity and the taking of a strip of land off the east end of Head's lots 35 feet wide and 144 feet long adjacent to the right-of-way directly in front of his store and home. A strip 10 feet wide and 137 feet long was taken off the west side of Horton's lots and a strip 15 feet wide and 128 feet long was taken off the north side of said lots.

Pursuant to the acquisition order appellees on October 9, 1953, filed claims for damages against appellant, Pulaski County, which were disallowed by the county court. After an extensive hearing in March, 1954, before the circuit court sitting as a jury, on appeal, the cause was taken under advisement. On June 11, 1954, the court submitted to counsel a statement of his findings of fact and conclusions of law with directions that a precedent for judgment be prepared awarding damages to Head in the sum of $6,000 and Horton in the sum of

$2,500. On June 15, 1954, the county filed a motion requesting that it be allowed credit for improvements in the amount of $1,748.57 to the Head property made after the taking of testimony by the court and before rendition of the court's statement on June 11, 1954. This motion was resisted by appellee Head but the court reopened the case and proceeded to hear further evidence rgarding the additional improvements on June 28, 1954, when a final judgment was entered under which the award to Head was reduced to $4,975.02. Pulaski County has appealed and Head has cross-appealed from the court's action in reopening the case for further testimony relating to the additional improvements.

The record designated by the parties on this appeal does not include any of the evidence taken at the first hearing but does include the statement made and submitted to counsel on June 11, 1954, and this statement contains a general resume of the testimony adduced at the first hearing. The record also includes the court's supplemental statement following the second hearing which stipulates that it does not cover the testimony adduced at that hearing. A supplemental "bill of exceptions" was filed by appellees containing the testimony introduced at the second hearing on June 28, 1954, but we have not been favored with an abstract of this portion of the record.

I. *The Direct Appeal.* Appellant's only contention for reversal is that the circuit court used the wrong measure of damages in fixing the awards to appellees. It is argued that in fixing the amount of damages the court based its findings and conclusions solely on the estimated costs of restoring each property to its former condition when it should have determined the difference between the market value of the lots before and after the taking. The court's findings clearly refute this contention. After detailing the general conditions including the drainage facilities existing before and after the improvement, the statement of the court reads:

"The proof in this case is somewhat in conflict. The engineer, John P. Powers, a licensed civil engineer, for the landowners testified that no access had been provided for Head, and that in his opinion in order for the property owner to be made completely whole, it would be necessary to place in the ditch a corrugated metal pipe arch culvert with earth fill covering, and that a covered junction box for joining the double 42 inch culvert with the double 60 inch culvert be provided. His estimate of the reasonable cost of this work is $6,400. The engineer is also of the opinion that the drainage facilities were probably inadequate and that Head would suffer some damages as a result of the impounded water overflowing his property. He felt that the property owners' views and access had been impaired as a result of the raising of the road.

"The engineer is of the opinion that the Horton property is going to be subject to intermittent and at least partial flooding because of the insufficiency of the drainage facilities that were provided. He is of the opinion that a wall along the south side of the ditch running east and west would be necessary to protect the lawn and the Horton home. His estimate of the cost of building this wall was $1,875. Also Horton testified that by reason of the raising of the road in front of his home it made it inconvenient for him to drive his car in the driveway in his yard, as he could before the raising of the road, and back his car out, but now he has to turn his car around in the yard to get it out.

"The real estate expert who testified for the property owners, was of the opinion that the Head property was worth $11,500 before the road was constructed, and that it was now worth $7,500. He qualified his testimony by saying that in arriving at this figure, he did not take into consideration the cost of providing ingress and egress across the ditch to the home and store. He disclaimed a lack of knowledge regarding this feature and said further that in his opinion that with the ditch covered, the property owner had still suffered a damage of some $4,000 over and above any benefit to the property

that may have been added by reason of the improvements. He was of the opinion that the Horton property had a value of $7,750 before the taking and of $6,250 after the taking, however, he qualified his estimate by saying he did not take into consideration the cost of building the wall necessary for the protection to Horton's property. Horton felt that his damages would run from 5 to 6 thousand dollars.

"Head's testimony reveals that he purchased the three lots in question on or about January, 1953, at a purchase price of $2,300 and that he commenced construction of the store building in February of 1953 and that the building was constructed at a cost of $8,500, that he moved in the store and dwelling in May, 1953, and formally opened the store for business June 1, 1953. Head testified that during the period since the road was constructed, customers had been unable to reach his store because of the mud, water and slush, and that as a result his business was off to a considerable extent. He claims that he lost a thousand dollars by virtue of this. He claims further, that he had a contract with one of the major oil companies to construct a service station on his two south lots and that as a result of the construction of the open ditch, this contract was cancelled and he was damaged in that respect.

"The engineer for the County was of the opinion that it would not be necessary to cover the entire ditch in order for Head to have satisfactory ingress and egress. He felt that the junction box should be installed and he offered to cover 83 feet of the ditch including the junction box. His estimate of the cost of this work was something over $3,000. He was of the opinion that the drainage provided in the construction of the road was adequate and that in many respects it was superior to the drainage which had existed prior to the improvement.

"The real estate expert for the County felt that Head had sustained damage to the extent of $2,000 and that Horton's damages were $400. In making these

estimates, the witness did not take into consideration the possibilities of overflow because he was of the opinion from information obtained by him, that the properties had been subject to overflow prior to the improvement of the road. There was testimony on the part of the claimants that neither the Head nor Horton property had ever overflowed prior to the improvement. This was disputed by other witnesses.

"The testimony was submitted and the parties agreed that the Court might view the property, and the property was inspected more or less in detail on three different occasions. There is no question that the owners have sustained damages. The difficulty arises in ascertaining the amounts which would adequately compensate them. The law with respect to the measure of damages in cases of this kind is rather well defined. Our Constitution provides that private property shall not be taken, appropriated, or damaged, for public use, without just compensation therefor. Our Supreme Court has many times held that the measure of damage, or just compensation, is the difference in the fair market value before the taking and after the taking. In arriving at this, in cases of this kind, the Court has said that we are to take into consideration any enhancement of the value of the property due to the improvement . . . Taking into consideration all of the facts, including any enhanced value the improvements may have added to the property, and the testimony, it appears to the Court that $6,000 would be reasonable award for Head, and that $2,500 would be fair compensation for Horton."

We think it is apparent from the foregoing that the court considered not only costs of restoration but also impairment of accessibility and view as well as sufficiency of drainage in arriving at the difference between the market value before and after the taking. In addition the court viewed the properties on three different occasions. It is true the real estate expert for appellees fixed the difference in value before and after taking at amounts less than the judgment but, as the court indicated, this witness admittedly did not consider certain

elements properly to be considered in reaching his conclusions. In our opinion the court's findings and conclusions are not contrary, but conform, to the rule laid down in *Kirk* v. *Pulaski Road Imp. Dist. No. 10,* 172 Ark. 1031, 291 S. W. 793, where the court said: "In cases of this sort, the owner is entitled to recover the difference between the market value of her property before the taking or damage to it and the market value afterwards. *L. R., Miss. R. & Texas Railway Co.* v. *Allen,* 41 Ark. 431, and *St. L. I. M. & S. Ry. Co.* v. *Theo. Maxfield Co.,* 94 Ark. 135, 126 S. W. 83, 26 L. R. A., N. S. 1111.

"Every element that can fairly enter into the question of market value and which a businessman of ordinary prudence would consider before purchasing the property should also be considered by the jury in arriving at the difference between the value of the property before and after the taking or damage to it. *L. R. Junction Ry.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 51.''

II. *The Cross-Appeal.* Appellee Head contends the court was without power to reopen the case for further testimony on June 28, 1954, on the motion filed by appellant. In support of this contention it is argued that original exclusive jurisdiction of such proceeding rested in the county court; that the damages became fixed as of May 4, 1953, the date of the original taking of the land; that appellant performed the additional work as a mere volunteer; and that it was not entitled to claim such work as a set-off of Head's damages. We believe appellee misconstrues the true nature and purpose of appellant's motion and the second hearing on June 28, 1954. No judgment had been rendered when the motion was filed and the court still had the cause under submission. We have repeatedly held that under Art. 7, § 33, of the Constitution and Ark. Stats., § 27-2006, the circuit court tries appeals from the county court *de novo* as if the cause had been originally brought in the circuit court in the first instance. *Batesville* v. *Ball,* 100 Ark. 496, 140 S. W. 712; *Carpenter* v. *Leatherman,* 117 Ark. 531, 176 S. W. 113.

It is also well settled that a trial court is vested with broad discretion in the matter of reopening a case for additional evidence. In the early case of *Turner* v. *Tapscott,* 30 Ark. 312, the circuit court permitted additional evidence after the case was closed and submitted for determination but before the court had rendered judgment. In holding there was no abuse of discretion the court said: "The code practice is liberal with regard to amendments when the object is to obviate an omission, either in pleading or evidence, if amended or allowed, which would tend to facilitate the final disposition of the case upon its merits. The defendants could not have been surprised. A material fact had not been proven, and it was a matter of discretion with the court to allow its introduction or not, and, under the circumstances, we think there was no abuse of this discretionary power in permitting it to be introduced." We have also said that in enacting Ark. Stats., § 27-1123, and other statutes relating to counterclaims and set-offs, it was the manifest purpose of the Legislature to permit litigants to settle all matters in dispute between them in a single suit. *Church* v. *Jones,* 167 Ark. 326, 268 S. W. 7; *Troxler* v. *Spencer,* 223 Ark. 919, 270 S. W. 2d 936.

There was no plea of surprise in the instant case and appellant was evidently making an honest effort to minimize the damages by the improvements made after the first hearing. Under the circumstances we are unable to say that a manifest abuse of discretion occurred in reopening the case to allow the introduction of further testimony.

Affirmed on direct and cross-appeal.