MISSOURI PACIFIC RAILROAD CO., THOMPSON, TRUSTEE
v. CLEMENTS.

5-717                                              281 S. W. 2d 936

Opinion delivered June 27, 1955.

[Rehearing denied October 3, 1955.]

*Cracraft & Cracraft* and *S. Hubert Mayes,* for appellant.

*E. E. Hopson* and *John C. Sheffield,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by appellee, W. Lee Clements, against appellants, Missouri Pacific Railroad Company and T. W. Keesee, to recover damages for trespass upon appellee's lands and to remove a cloud on his title thereto.

The appellant railroad maintained a wooden trestle over its line across Swan Lake in Desha County. In 1944 the trestle was damaged by fire and the company decided to replace it with an earthen fill. The proposed project required the acquisition of land in the vicinity, or easements to excavate such land, in order to obtain a suitable supply of dirt for that purpose. Appellee owned a 40-acre tract adjacent to the fill site upon which there was a high silt ridge of timbered land that was most suitable and economically desirable for making the fill. Appellant Keesee owned a tract immediately north of appellee's land.

There was an exchange of conveyances between the appellants in August, 1944, whereby the railroad conveyed to Keesee 47.5 acres of farm land lying about a mile north of the land desired for making the fill in exchange for an easement with right to excavate for a 10-year period on 38 acres described by metes and bounds adjacent to the fill site. The lease deed executed by Keesee embraced about 20 acres actually owned by appellee and included the high silt ridge from which the railroad planned to obtain dirt for the fill. The railroad proceeded with the excavation resulting in the digging of a 7.9-acre borrow pit upon and otherwise rendering worthless a total of 10 acres of appellee's land.

The excavation work was nearly completed before it was discovered by appellee whose protests resulted in extensive negotiations for a settlement without success

and the institution of this suit. Appellants offered no evidence at the trial and upon the proof presented by appellee the chancellor made extensive findings and entered a decree removing the cloud on appellee's title cast by the lease agreement and awarding him damages in the sum of $3,200 for the destruction of his land.

It is undisputed that the location and terrain of the land destroyed made it by far the most suitable and economical in the area for the railroad's use. The use of any other available land in the area would have entailed a much longer haul and added considerably to the cost of the project. Appellee testified that land in the area like the 10 acres in question was worth $70.00 per acre as timbered and uncleared farm land. He also testified that during the negotiations following the excavation he had a conference with H. H. Gudger, an engineer and Assistant Superintendent of the railroad at Wynne, Arkansas, in which the latter informed appellee that the railroad removed approximately 80,000 cubic yards of dirt from his land. Appellee further testified without objection that prior to the letting of the excavation contract he had a long conference with a contractor named Reed who was doing some work in the vicinity and was a prospective bidder on the excavation job. Reed had approached appellee about purchasing the land in question in the event he became the successful bidder and stated that railroad authorities had advised that the fill would require about 80,000 cubic yards of dirt. It was then and there agreed that Reed would pay appellee $100 per acre for the land used plus 4 cents per cubic yard for the dirt if Reed obtained the contract. There was also uncontradicted evidence to the effect that the 47.5 acres which the railroad deeded to Keesee in exchange for the 10-year lease agreement had a market value of $100 per acre.

In fixing the amount of appellee's damages the trial court found that the railroad was in reality buying dirt, and not timbered land, and that it removed 80,000 cubic yards of dirt worth 4 cents a yard from appellee's land in making the fill. The following further findings by the

court are fully supported by the record: ''The evidence on the part of the plaintiff which may be treated as competent on the subject, together with the inferences therefrom, establish the gratuitous enrichment of Mr. Keesee in the sum of $4,750.00 and the enrichment of the Railroad Company by getting what it wanted, where it wanted it, and at considerable saving to itself. The evidence, also, shows that plaintiff furnished the dirt for this valuable fill or embankment for which he has not received one penny, with practically no effort on the part of the Railroad Company to see that he got remuneration and with actual opposition on the part of Mr. Keesee to prevent him from getting reasonable compensation.''

I. *Measure of Damages.* Appellants first argue that the chancellor applied the wrong measure in arriving at the amount of appellee's damages. They point to appellee's testimony to the effect that the 10 acres in question was worth $70 per acre as timbered and uncleared farm land and say that this constituted the only evidence in the record which even purported to establish the market value of the land destroyed. As appellants suggest, we have held that the measure of damages for permanent injury to real estate is the difference in market value before and after the injury. *Standard Oil Co. of La.* v. *Goodwin,* 174 Ark. 603, 299 S. W. 2. It would follow that where the injury is both total and permanent, as here, the measure of damages would be the market value of the land destroyed. In establishing market value, however, it does not necessarily follow that the landowner is limited to the value of the land for one purpose only.

In *Fort Smith and Van Buren Bridge District* v. *Scott,* 103 Ark. 405, 147 S. W. 440, the court stated: ''The measure of the owner's compensation for the land condemned is the market value thereof at the time of the taking for all purposes, comprehending its availability for any use to which it is plainly adapted, as well as the most valuable purpose for which it can be used and will bring most in the market.'' See, also, *Kansas City So. Ry. Co.* v. *Boles,* 88 Ark. 533, 115 S. W. 375; *Gurdon and*

*Fort Smith Rd. Co.* v. *Vaught,* 97 Ark. 234, 133 S. W. 1019. Thus in a proceeding to condemn a site for a railroad bridge this court held that evidence showing that the land required for that purpose possessed superior advantages as a bridge site was admissible as affecting the question of its market value. *L. R. Junction Ry.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 51. Also in *Yonts* v. *Public Service Co. of Arkansas,* 179 Ark. 695, 17 S. W. 2d 886, landowners were held entitled to judgment for the market value of land based on its availability as a damsite and reservoir. While the foregoing cases involved condemnation proceedings under the power of eminent domain of railroads or other utilities, we hold the same rule applicable here. It would be anomalous indeed to say that an owner should receive less for property taken from him tortiously and without authority than when taken by orderly legal process. It follows that the chancellor, in fixing the market value of the land destroyed, was not confined to a consideration of its use for agricultural purposes and had a right to base his findings upon its availability for the most valuable purposes for which it could be used, including its location, character and suitability for use in making the fill.

II. *The Evidence.* Appellants also contend there was no competent evidence upon which to predicate an award of $3,200 or base a finding that 80,000 cubic yards of dirt had been excavated. They point to the testimony of appellee relative to his conferences with, and statements made by, Gudger and Reed and urge its incompetency as hearsay. But this testimony was admitted without objection in the trial court and it is too late to make such objection here. We so held in *Gen. Fire Ext. Co.* v. *Beal-Doyle D. G. Co.,* 110 Ark. 49, 1605 S. W. 889, where there was a failure to object in the trial court to testimony fixing an erroneous basis for determining market value. See, also, *Sandidge* v. *Sandidge,* 212 Ark. 608, 206 S. W. 2d 755. The rule that all objections to evidence and witnesses must be made in a timely manner in the trial court, and will be considered as waived when the case reaches us on appeal, if not so made, is equally applicable in

chancery cases as in cases at law. *Umberger v. Westmoreland,* 218 Ark. 632, 238 S. W. 2d 495.

Moreover, we do not agree that the statement made by Gudger was incompetent. Several communications between the railroad and appellee tend to show authority to speak for the company. In addition there was the uncontradicted evidence of the peculiar adaptability of the land for the purpose at hand and that the land given by the railroad in exchange for the excavation right had a market value of $4,750. In our opinion the evidence is sufficient to sustain the damages awarded.

Affirmed.