ARK. STATE HIGHWAY COMM. v. JACKSON COUNTY GIN CO.

5-3182                                          376 S. W. 2d 553

Opinion delivered March 2, 1964.
[Rehearing denied April 6, 1964.]

*Mark E. Woolsey* and *Thomas B. Keys,* for appellant.

*Wayne Boyce* and *Fred M. Pickens, Jr.,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from eminent domain proceedings brought by appellant Arkansas State Highway Commission against appellees, Jackson County Gin Company and others, to acquire .08 acres of appellees' land for highway purposes. On May 26, 1961, appellant filed its complaint and declaration of taking in Jackson Circuit Court and deposited $450.00 in

the registry of the court as estimated just compensation. Trial was held on May 14, 1963. After deliberation the jury returned a verdict for appellees in the sum of $6,000.00. From judgment on the verdict, appellant has prosecuted this appeal urging four points for reversal.

The first point relied upon by appellant is that the court committed reversible error in permitting one of the former owners, Mr. R. S. Rainwater, and the manager for the present owner, Mr. Bob Gardner, to testify over the objection of appellant to an offer made by Mr. Rainwater to sell three gins to Mr. Buck Hurley and to testify that Mr. Rainwater had reduced the sales price $10,000.00 because of the condemnation.

Mr. Rainwater, one of the appellees who had owned 90% of the stock in the gin company, testified that he was negotiating with Mr. Buck Hurley to sell him three gins, including the Jackson County Gin, for "about two hundred forty thousand dollars." His testimony reveals that further negotiations were postponed, apparently, until after cotton season, during which period Mr. Hurley died; that negotiations were later resumed with other officers of the Hurley corporation and a sale of the gins was consummated. In the interim, however, appellant had filed this condemnation action. After appellant's objection, Mr. Rainwater's testimony continued as follows:

"Q. How much less than the full price did you get on the subsequent sale?

"A. Well, they felt, and I think it was their feeling and our feeling and the feeling of their counsel, that since this property had been condemned that we were the losers and they were buying it as is, don't you see; I mean that was their contention that the Highway Department was not condemning the property that belonged to them, it had already condemned the property that belonged to us. Therefore, if any damages, and what damages were sustained that belonged to us and they would have to buy it as it was, and we admitted to them and we told them they would have to move their scales which they understood

and they wanted us to arrive at a price so that it would enable them to do that and I took off $10,000.00 of what we had practically agreed on because we have got to move those scales and we have got to do a lot of other things there. And then they said this, that they would buy it as it was and we would let this suit continue as it was and the suit then would be between the Highway Department and against us. Now that was the agreement that we had in the sale of the property.''

Mr. Bob Gardner, the managing head of the Hurley Enterprises, testified over appellant's objection that the tentative purchase price was reduced, and that the amount of the reduction was $10,000.00.

Appellant urges that the principle of *Arkansas State Highway Commission* v. *Elliott*, 234 Ark. 619, 353 S. W. 2d 526, should be controlling here. In that eminent domain case the landowner's lay witness was allowed to testify what he had offered to buy the property for from the landowner and also allowed to read into evidence a letter containing this offer. After discussion of the testimony and review of a number of authorities, this court unequivocally stated, ''we hold that the evidence of an offer to purchase is not admissible to establish the fair market value of particular property.'' It is true as argued by appellees that the case at bar is distinguishable from the *Elliott* case on its facts, however the salutary rule laid down in *Elliott* must not be ''distinguished'' away, and we therefore reaffirm our holding that the evidence of an offer to purchase is not admissible to establish the fair market value of particular property.

For its second point appellant contends that the trial court committed reversible error in permitting evidence of moving costs to be introduced over appellant's objection. Under the rule of *Arkansas State Highway Commission* v. *Carpenter*, 237 Ark. 46, 371 S. W. 2d 535, moving costs could be considered a factor in arriving at the before and after value. The rule was stated thusly in *Carpenter*:

"We have said that there is no set formula or pattern that must be followed at arriving at before and after value. (Cases cited.) Consideration may be given to every element which a purchaser, willing but not obligated to buy, would consider."

Appellant next asserts that the trial court committed reversible error in not striking the testimony of Joe Stafford, one of appellees' value witnesses. While much of Mr. Stafford's testimony was clearly inadmissible, we are bound by the rule that a motion to exclude all of the testimony of a witness is properly overruled if a part of the testimony is competent. *Arkansas State Highway Commission* v. *Bowman*, 237 Ark. 51, 371 S. W. 2d 138; *Arkansas State Highway Commission* v. *Carpenter, supra.*

Appellant's last point questions the sufficiency of the evidence to support the judgment. Inasmuch as the case must be reversed and remanded for the error indicated, we do not reach this point in this appeal.

Reversed and remanded.