## ARKANSAS STATE HIGHWAY COMMISSION *v.* SOUTHERN DEVELOPMENT CORPORATION

5-5508                                    468 S. W. 2d 102

Opinion delivered June 21, 1971
[Rehearing denied August 9, 1971.]

*Thomas B. Keys, George O. Green, James N. Dowell* and *Coleman, Gantt, Ramsay & Cox;* By: *John G. Lile,* for appellant.

*John Harris Jones,* for appellee and cross-appellant.

BEN CORE, Special Justice. Appellee, Southern Development Corporation, hereinafter called Southern, prior to this suit, was the owner of an 8.3 acres tract of land lying north and east of the Arkansas River upstream from the City of Pine Bluff. The tract fronts 940 feet on the River. The Arkansas State Highway Commission, hereinafter called Commission, filed this condemnation suit for the purpose of taking 1.60 acres of the tract in fee and a temporary easement on a smaller piece measuring 110 feet by 151.5 feet for a total of 2.01 acres. After the taking two tracts remained, one lying northwest of the bridge containing 3.31 acres and the other lying south of the bridge containing 2.98 acres. Preliminary to the order of possession the Commission deposited $2,500.00 with the Court as estimated just compensation. In its answer Southern contended that the land was adapted as a bridge site, commercial site or industrial site for motel, marina and recreational facilities or for other use considering its river frontage, elevation and accessibility to the urban area of Pine Bluff. Southern's answer as finally amended claimed $634,-000.00. The jury awarded $35,000.00. The Commission has appealed and Southern has cross-appealed.

Points relied upon by the Commission, with some slight renumbering from the brief, are:

1. The Court erred in permitting the jury to consider the question of whether or not the highest and best use of the land was that of a bridge site.

2. The Court erred in permitting the jury to consider the testimony of Jim Hood as to the value of the land as a bridge site.

3. The verdict is excessive in that there is no substantial evidence to support it.

On its cross-appeal Southern contends that the trial court erred in the following particulars:

1. In excluding the testimony of L. P. Carlson and Leo Tyra as to the amount of savings on cost of construction of the bridge at this particular site over that of the next most feasible site;

2. The exclusion of the testimony of Jim Hood as to the basis of his opinion on the value of the land as a bridge site;

3. In the giving of the plaintiff's instruction number 12 which told the jury that it should consider the value of the land the landowner place on the property for tax purposes as evidence of its true value.

Southern contends that this court has the authority to and should increase the jury verdict to the sum of $207,500.00 upon Southern's consenting that the temporary construction easement be made permanent for highway and bridge purposes. The Commission contends that this court has the authority to and should reduce the verdict to $3,500.00, which is the market value figure established by the Commission's appraiser. *Arkansas State Highway Commission* v. *Bingham,* 231 Ark. 934, 333 S. W. 2d 728 (1960).

The Commission's points 1 and 2 can be rephrased into one contention which is that there was no testimony as to the special adaptability of this property as a bridge site and for that reason the jury should have been directed to disregard any valuation opinion based upon such adaptability. We think that just the reverse is true, which is that there was no competent testimony as to the value of the property as a bridge site and therefore its adaptability as such should not have been submitted to the jury. We, therefore, reverse on direct appeal.

Before demonstrating this result from the record, it will be helpful to set out the governing rules from prior decisions of this court. It is interesting to note that both parties cite substantially the same decisions of this court, with a few exceptions, to sustain their respective

positions. There is apparent agreement as to the establishment of the following rules concerning the taking of private property for public use.

Private property shall not be taken, appropriated or damaged for public use without just compensation therefor. Arkansas Constitution, Article 2, Section 22. The title to land is always held upon the implied condition that it will be surrendered to the government when the public necessities demand and when full compensation has been tendered. *L. R. Junction Ry.* v. *Woodruff*, 49 Ark. 381 (1887). The true measure of just compensation is the "market value of the property". *L. R. Junction Ry.* v. *Woodruff, ibid.*

> "The owner in parting with his property to the State is entitled to receive just such an amount as he could obtain if he were to go upon the market and offer the property for sale. To give him more than this would be to give him more than the market value and to give him less would not be full compensation."

In arriving at this market value the approach is to consider what has been taken from the owner, in other words, what the owner has lost, disregarding its value to the condemnor. The objective is to arrive at the market value, or the value in the market, of the property taken. It is thus opposed to the subjective consideration of what the condemnor has gained or what is the value of the property to the person or entity taking the same. Nichols on Eminent Domain, Volume 3, Section 8.61, page 49.

> "As a general guide to the range which the testimony should be allowed to assume, . . . the landowner should be allowed to state, and have his witnesses to state, every fact concerning the property which he would naturally be disposed to adduce in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual. . . .In offering testimony on this issue the owner was not limited to any pre-existing use of

the land. If it was of little value as a farm, or for common uses, and was of great value as mineral land or as a townsite, that fact might be shown, though it had never been so used." *St. L. I. M. & S. R. Co.* v. *Theo. Maxfield Co.*, 94 Ark. 135, 126 S. W. 2d 83 (    )."

". . . the owner had the right to obtain the market value of the land, based upon its availability for the most valuable purposes for which it can be used, whether so used or not." *Yonts* v. *Public Service Company of Arkansas*, 179 Ark. 695, 17 S. W. 2d 886 (1925)."

Market value is a factual issue peculiarly within the province of the jury and to be proved by the owner as a fact.

". . . we are asked to review the verdict upon the testimony. This is a delicate duty in any case, and especially so in a case where the sole issue is one as to value. This is so peculiarly within the province of the jury; . . . nothing but an extreme case would justify our interference. *L. R. Junction Ry.* v. *Woodruff, ibid.*

In addition to the principal issue of fact, which is the market value, sub-issues of fact can develop on the question of adaptability of the parcel to the various uses urged by the owner. The ultimate issue is the market value but other dependent factual issues can develop in the process of proving the ultimate issue.

In this case Southern pleaded the issue of the peculiar adaptability of this property as a bridge site. We think this is one of those possible characteristics which could be urged by a landowner as a contributing factor to the market value of his parcel. Further, we think that in this case there was proof introduced as to the existence of that characteristic of such substantial nature that reasonable minds could draw different conclusions therefrom as to such adaptability and, therefore, that a jury question was made on the issue of

adaptability. However, more is required before the issue can be submitted to the jury. Proof of a market value for the parcel for that use must be made. Mere proof of adaptability, without more, does not establish such market value. There must be such demand for the property for that use.

The only proof offered here as to such value as a bridge site was the testimony of Jim Hood establishing a difference in before and after value of $640,000.00. Jim Hood is president of Southern. He testified to training and experience sufficient to qualify himself as an expert in real estate management, development and appraisement. He testified on direct examination that, in his opinion, the highest and best use of the property was as a bridge site. He further testified that, in his opinion, for that use, the difference in the fair market value of the 8.3 acres before and after the taking was $640,000.00. If that were all that was in the record we think that no reversible error would be present because an expert is entitled to state his opinion as to market value on direct examination without further explanation and the same constitutes substantial evidence sufficient to support a jury verdict unless additional information is brought out demonstrating that such expert has no fair and reasonable basis for his opinion. In other words, the opinion of an expert is given the weight of evidence prima facie and, unless thereafter exposed as having no fair and reasonable basis, constitutes substantial evidence upon which a jury verdict can be based. *Arkansas State Highway Commission* v. *Johns,* 236 Ark. 585, 367 S. W. 2d 436; *Arkansas State Highway Commission* v. *Ptak,* 236 Ark. 105, 364 S. W. 2d 794 (1963).

However, in the direct examination Southern's attorney attempted to bring out the basis for his opinion. Counsel for the Commission anticipated the basis and objected to the same being brought out. The trial court sustained the objection. Even at that point we think that no reversible error had been committed. However, Southern's counsel then made an offer of proof on the basis of the opinion. The basis thus brought out was revealed to be that the witness had acquired bridge cost

information from the report made by the consulting engineers to the State Highway Department on the proposed bridge construction for which condemnation was brought. This is referred to by the witness and other witnesses as the Brighton Engineering Report. This report showed, according to the witness, that construction of the bridge on this site as opposed to the next most feasible site, would cost an estimated $831,500.00 less. The witness testified.

"And. from that I determined that this particular site, in my estimation this particular site, attributed $640,000.00, a $640,000.00 advantage to the bridge."

This testimony exposed the opinion on value to be without "a fair and reasonable basis" without which even the opinion of an expert fails as substantial evidence and must be stricken. *Arkansas State Highway Commission* v. *Ptak,* 236 Ark. 105, 364 S. W. 2d 794 (1963). It is true as pointed out by Southern that no motion to strike this testimony was made by Commission's counsel. However, counsel did seek to exclude from the jury the adaptability question by motion for directed verdict and by a requested instruction, both of which were denied by the court. This was sufficient to raise the question as to the presence in the record of adequate proof to raise a jury question on the market value of the land as a bridge site. The Jim Hood opinion, having been exposed as having no "fair and reasonable basis", was inadequate as such proof. The incompetency of this testimony was referred to by the commission's attorney in arguing his motion for directed verdict to the court. There was no other proof; therefore, the issue of the value as a bridge site should not have been submitted to the jury.

We feel, therefore, that the motion for directed verdict on the issue of peculiar adaptability as a bridge site should have been granted for failure of proof on value even though there was substantial proof on adaptability. When the landowner exposed the basis of his value figure as not being a fair or reasonable basis, the effect was to leave the bridge site adaptability without

proof of value. Without such proof of value there was no way the jury could have arrived at a figure for the market value of the land by reason of its adaptability as a bridge site. Therefore, the question of its value as a bridge site should not have been submitted to the jury.

We do not intend by this to say that the trial court should have excluded proof offered on the adaptability of the parcel as a bridge site until after some proof was offered on its market value for that use. In other words, we do not mean to say that proof of its market value for that use must come in as a condition precedent to proof as to adaptability for that use. We do not intend to set up any priorities as to the sequence of the admission of proof. What we do intend to say is that after all of the proof is in and instructions to the jury are being considered, no instruction should be given permitting the jury to consider the question of the market value of the property for any use on which there has been no proof as to such market value for that use even though there may have been proof as to its adaptability for that use. Further, if an instruction is requested admonishing the jury that it should not consider the question of the value of the property for that use such instruction should be given.

On retrial if proof can be made of its value as a bridge site along with the proof of its adaptability, the jury should be permitted to consider it.

We hold that the opinion on value of $640,000.00 was not proper because it violates the rule that the value of the site to the condemnor is not the measure of damages. Mr. Hood was simply taking the dollar amount of money saved in construction costs by the condemnor in placing his structure on this parcel as opposed to the next most feasible parcel. True the savings were discounted some in arriving at the market value figure, approximately 25%, but the market value figure is still obviously part and parcel of the "savings" in construction costs at the selected site over the next most feasible site. No more direct violation of the rule against con-

sidering the subjective value of the site to the taker could be imagined. He is required to divide his savings with the landowner on a one-fourth-three-fourths basis. Since that is the basis of the value figure given by Jim Hood, and since it is in direct conflict with a cardinal rule of condemnation law, the opinion figure simply cannot stand. Without it there is no guide for the jury as to the market value of the property as a bridge site.

We have not overlooked the case of *Gurdon and Fort Smith Railroad Co.* v. *Vaught*, 97 Ark. 234, 133 S. W. 1019 (1911), cited by Southern. Southern has done well to call our attention to that case because at first blush it appears to sustain the position of Southern on this issue. That case involved the condemnation of a right-of-way for railroad purposes through the mountainous terrain of Montgomery County near Caddo Gap. The landowner introduced testimony of a number of civil Engineers who, according to the language of the opinion:

Page 241:

"testified to facts tending to show a demand for railroad construction in that section of the country, and that this Gap or Pass . . . was practically the only feasible route through this mountainous country. . . . Counsel for defendant urged that the Court erred in permitting these witnesses to testify that the land taken by defendant had a pecuniary advantage for a railroad site over all other lands in this vicinity. . . because of the great cost in making any other site feasible for the location of a railroad through these mountains; . . . the witnesses gave an estimate of the great expense and cost in preparing another site for railroad purposes in comparison with this site, . . . It is urged that this testimony in effect based the value of the site taken upon the benefit that it might be to defendant and of its necessities to acquire that particular property rather than on the actual market value thereof and the loss to the plaintiff by the defendant's appropriation thereof."

Thus a violation of the rule against basing value proof on the benefit to the condemnor was urged there and rejected by this Court. This Court said:

"In order to show the adaptability of the land taken for the purpose desired, it is competent to show the cost and expense that would be necessary to put other land in the condition of the land taken, which condition gives it a peculiar value for the purpose for which it is appropriated. . . . . The cost and expense of placing any other site in that section of the country in a condition available or adaptable for railroad purposes which the site in controversy possessed would tend to prove the peculiar advantages of this location for such object and its adaptability for such purposes. It was not error to admit such testimony for that purpose."

The "purpose" for which the testimony there was admitted was to show adaptability and "special pecuniary value". Admittedly, this gets awfully close to violating the rule against considering value to the taker rather than loss to the owner. There may have been more of the former in this approach in the *Vaught case* than we had appreciation for at the time and we feel that it should be limited to its special facts.

The prime point, however, is that the costs and differences in costs treated in the *Vaught case* were those required to reshape the ground as, for example, the making of fills, cuts and tunnels. Money spent on the ground is far different from money spent on structural improvements. There is a basic and built in limitation upon costs of reshaping the mother earth to suit man's needs. On the other hand, when one leaves the earth and commences to consider the differences in costs of structures to be stationed upon the earth, there is no limit. The condemnor could be intending to locate an improvement costing one thousand dollars or ten billion dollars and the costs savings could vary in like extremes from one possible site to the next.

Southern contended in the trial court and contends here that the inquiry on costs savings of construction

at one site over the next most feasible site was introduced with approval by language used in the opinion of this court in *L. R. Junction Ry.* v. *Woodruff,* 49 Ark. 381, 395, 396 (1887). That language is preceded by the following:

> "One or more witnesses for appellees were asked to give the comparative cost of building bridges at different points along the river front above and below the Point of Rocks, or rather to state the difference in such cost. The witnesses were also asked, 'What is the value of the property for bridge purposes?' "

That objection was taken to this line of questioning by appellant's counsel is shown by later language of the court:

> "It is very apparent however from the argument that the objection taken by counsel is not the objection which we take to this interrogatory."

This reflects that the court also considered the line of inquiry improper, but for a different reason than did opposing counsel. The court then suggested, and this is the language relied upon by Southern:

> "It would have been less misleading to have asked "What would be saved by building a bridge at this point as compared with other points below or above?' or, 'What were the pecuniary advantages offered by this point for building a bridge?' "

To say that one question is less misleading than another leaves the implication that both are misleading to some degree. We think this falls short of submitting the "less misleading" question as a guide for future use or its line of inquiry as permissible in proof of market value on a parcel of ground adapted as a bridge site.

We recognize that Southern is going to have a problem on retrial of proving any market value for a bridge site. Demand is an essential element of market value. If

there is no demand there is no market value for that use of the property. It is easy to find property in remote and unpopulated areas that would be readymade for some intensive use that would give it tremendous value if only it were located somewhere else. If there is no demand for that use at that location the property does not have value for that use in the market. This is a necessary risk of ownership. The owner, in proving his market value, must prove a demand. This demand must be one other than that of the taker. The taker's need must be disregarded. If this landowner cannot prove a sufficient demand for bridge sites in this area, other than that of the Commission, to establish a market value on bridge sites, then he has no market for bridge sites and is not entitled to have its value as a bridge site considered.

In the *Woodruff case*, previously cited herein, this Court stressed the necessity of a showing of demand as a component of market value.

Page 393:

"Of course it does not follow that because a particular spot of ground constitutes a good bridge site, that it therefore has great market value. There may be no reasonable probability that anyone will ever want to build a bridge at that point. This probability is an essential condition of value in such cases."

For purposes of retrial, we feel it necessary to pass on the three points made by Southern on cross-appeal.

As to the exclusion of Jim Hood's testimony as to the basis of his opinion, this ruling came about in an unusual manner. Ordinarily the basis of the opinion of an expert is gone into much more thoroughly on cross-examination than on direct, and thus there is no objection to the evidence on the basis. But here the attorney for the Commission was already aware of what the basis was going to be and objected to the jury hearing it. On the other hand the landowner's attorney wanted the jury to hear it. Since it had a direct bearing on whether

the basis was "fair and reasonable" it should have been admitted. But, of course, when it is admitted it reveals the fact that the opinion of the witness as to market value of the land as a bridge site has no "fair and reasonable basis" and is subject to a motion to strike. Thus, the Commission, instead of objecting to this proof, should have been attempting to develop it, and the landowner, instead of attempting to develop it, should have been leaving it untouched. But the fact that the parties, by mutual misconception, got switched on sides of the issue should not obscure the fact that it is proper to show the basis of an expert's opinion. The proof should have been admitted for that purpose and then the directed verdict should have been granted. The costs proof would not have been admissible except to show the basis of the expert's opinion. It would not have been admissible as direct proof on market value.

What we have just said also covers the trial court's ruling excluding the costs savings testimony of the witnesses L. P. Carlson and Leo Tyra.

We hold that the third point of Southern is well taken. The record is identical to the situation found in *Arkansas Highway Commission* v. *McMillan,* 247 Ark. 419, 445 S. W. 2d 717 (1969) in that there is no proof that the landowner made the assessment revealed by the public records but only that it was shown "by the courthouse records". Instruction number 12 should have been refused for lack of proof to support it.

Reversal on both direct and cross-appeal and remanded for a new trial.

BYRD, J., not participating.

HARRIS, C. J., and FOGLEMAN and HOLT, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. While I agree with much of the majority opinion, I do not agree with the result or with the application made of our law relating to evidence in eminent domain cases. What we

must never forget is that the polestar in these cases is just compensation to the owner of private property— not the easy or economical acquisition of that property for public purposes. Our policy is stated in Article 2, Section 22, of the Constitution, the full text of which is:

> The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor.

We have said that the words "just compensation" used here mean full compensation. *Arkansas State Highway Commission* v. *Stupenti,* 222 Ark. 9, 257 S. W. 2d 37. Our rules of evidence in these cases have been directed toward assuring this objective.

I do not agree that the landowner was barred from showing the adaptability of his property as a bridge site, regardless of whether there was competent evidence as to its value as a bridge site.

The landowner is not confined strictly to testimony stating the market value of his property taken or damaged. Generally speaking, he may show anything that a buyer of prudence would consider before he would purchase or that a seller would weigh either before or after the taking. *Little Rock Junction Railway Co.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792, 4 Am. St. R. 51; *Yonts* v. *Public Service Co.,* 179 Ark. 695, 17 S. W. 2d 886; *Pulaski County* v. *Horton,* 224 Ark. 864, 276 S. W. 2d 706; *Arkansas State Highway Commission* v. *Carpenter,* 237 Ark. 46, 371 S. W. 2d 535.

In *Little Rock & Ft. Smith Railway* v. *McGehee,* 41 Ark. 202, we affirmed a judgment in favor of the landowner where the condemnor had moved to exclude all evidence relating to the feasibility of establishing a ferry from the lands to the opposite bank.

In *Little Rock Junction Ry.* v. *Woodruff,* supra, we adhered to the rule of *McGehee,* saying that it went no further than to hold that the owner may be allowed

to show every advantage which his property possesses, present and prospective, in order that the jury may satisfactorily determine what price it could be sold for on the market. In arriving at the affirmance of the judgment in favor of the landowner, this language was used:

> As a general guide to the range which the testimony should be allowed to assume, we think it safe to say that the landowner should be allowed to state, and have his witnesses to state, every fact concerning the property which he would naturally be disposed to adduce in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual.

> \*     \*     \*

> It can hardly be doubted that, if Woodruff had gone upon the market to sell this property, he would not have concealed the fact that it possessed superior advantages as a bridge-site. Now, if he would not have concealed it from a purchaser, it would be unfair to him for the court to conceal it from the jury. On the other hand, if one had been about to purchase the property, he would hardly have been so obtuse as to overlook an element of value so obvious as its eligibility for a bridge-site.

In *Ft. Smith & Van Buren Bridge District* v. *Scott,* 103 Ark. 405, 147 S. W. 440, we said:

> We do not understand the law to be, as contended by appellant, that because the 10 acres of land taken had no peculiar natural advantage over the next or any other 10 acres north of it, along the bank of the river for half a mile, for a bridge site, that therefore the land selected had no value for that purpose. It was in the line of travel, upon the usual traveled way between a thriving city, Van Buren, on the east side of the Arkansas river, and a large and important city, a few miles to the west, Ft. Smith, with an interurban car line that would

cross the bridge, projected between the two cities, and already constructed and in operation down to the ferry upon the Ft. Smith side of the river, and an act of the Legislature providing for the construction of a free bridge within the limits of the city of Van Buren that must have a site for the west approach thereof upon the further bank opposite to said city, and we cannot see why these facts could not all be taken into account in estimating the value of the land condemned for a bridge site, nor why would they not have been such things as the owner of the land desiring to sell it would naturally call to the attention of one proposing to buy. Certainly, no man with capacity to own lands under similar conditions would overlook such facts as were shown to exist here, "the existing business and wants of the community," and such as could be reasonably expected in the immediate future, in attempting to make a sale thereof, to one proposing to purchase, as an inducement thereto and in substantiation of the value thereof in fixing a price therefor. And this court has often held that, in determining the value of land condemned for public purposes, the same considerations are to be regarded as in the sale of property between private parties, and the convenience and availability of this property for use as a landing for the bridge was a material consideration in fixing its value.

In *City of El Dorado* v. *Scruggs,* 113 Ark. 239, 168 S. W. 846, we said that in the determination of market value of the owner's property, the rule *established* in this state was that the owner may be allowed to show every advantage that his property possesses, present and prospective, in order that the jury may satisfactorily determine what price it could be sold for upon the market.

In *Arkansas State Highway Commission* v. *Hood,* 237 Ark. 202, 372 S. W. 2d 387, we said:

Of course, a castle costing a million dollars, built in the desert 100 miles from the nearest habitation

may add very little, if anything, to the value of the desert land. But if the land was being taken in a condemnation proceeding the landowner would be entitled to show that a very fine castle was located thereon. Actually, it is conceivable that in some instances structures on the condemned property may cause it to have less market value than if the structures were not there.

In *Pulaski County* v. *Horton,* 224 Ark. 864, 276 S. W. 706, we affirmed a judgment in favor of the landowner for an amount in excess of his value expert's difference in market value before and after the taking, because the circuit judge, sitting as a jury, considered impairment of accessibility and drainage to the owner's remaining lands, along with cost of restoration, in arriving at the difference between the market value of the whole tract before and after the taking. The owner's expert witness had not taken into account these elements because he had no knowledge of, and did not take into consideration, the cost of providing ingress and egress or the cost of building a wall necessary to protect the remaining property. The cost of restoration of access and the wall was shown by an engineer who gave no testimony as to value. We reiterated the following statement from Woodruff:

Every element that can fairly enter into the question of market value, and which a business man of ordinary prudence would consider before purchasing the property, should also be considered by the jury in arriving at the difference between the value of the property before and after the taking or damage to it. *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792.

In *Scott* v. *State,* 230 Ark. 766, 326 S. W. 2d 812, the only testimony relating to any value of the landowner's property taken for Pea Ridge National Park, other than for agricultural uses, was largely that of witnesses who stated facts tending to show the property had a value for park purposes. Some of them expressed opinions as to value ranging from $50,000 to $125,000.

Most of them expressed no opinion as to value at all. The condemnor's witnesses placed the value principally for agricultural purposes at $5,000 to $9,067.50, one of them adding $10,000 for "historical purposes." In increasing the compensation from $16,500 to $30,000, this court quoted the following, inter alia, from *Gurdon & Ft. Smith Rd. Co.* v. *Vaught,* 97 Ark. 234, 133 S. W. 1019:

> The peculiar circumstances of its location and the character of the surrounding country may be proved in order to show the adaptability of the land taken for the purpose desired, because that would be an element of value which the owner would have a right to insist upon in estimating the value of his land.

In *Stuttgart & R. B. R. Co.* v. *Kocourek,* 101 Ark. 47, 141 S. W. 511, the condemnor contended that scope of inquiry as to damages in a partial taking permitted by the court was too large. After restating the guide to the range of testimony in *Woodruff,* and other cases, we rejected the idea that the range was restricted because of want of any opinion and estimate of value, based on the particular advantage of the property involved. We said:

> From these authorities, it appears what range the inquiry as to the damages caused by the condemnation and taking of land for public purposes may properly take, both as to the *elements* of damage *and* the witnesses' *opinions and estimates* thereon, and we do not find that its scope was extended beyond the prescribed limits in this cause, nor that any error was committed by the lower court on that account. (Emphasis mine.)

In *Arkansas State Highway Commission* v. *Ormond,* 247 Ark. 867, 448 S. W. 2d 354, we held that the testimony of the landowner as to the value of his property for catfish farming should have been stricken because it was based entirely upon speculation as to anticipated income. Yet we said:

It must be remembered that only Ormond's opinion as to the land value before the taking would have been stricken. This would leave for the jury's consideration, not only Ormond's opinion as to the value of the remaining lands, but his testimony as to the characteristics of the land and as to a much disputed point—its highest and best use. This was appropriate. Ormond was entitled to show every advantage that his property possessed, present and prospective, in order that the jury might satisfactorily determine what price it could have been sold for on the market. *Arkansas State Highway Commission* v. *Carder,* 228 Ark. 8, 305 S. W. 2d 330; *Arkansas State Highway Commission* v. *O. & B., Inc.,* 227 Ark. 739, 301 S. W. 2d 5; *City of El Dorado* v. *Scruggs,* 113 Ark. 239, 168 S. W. 846; *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792, 4 Am. St. R. 51; *Kansas City Southern Ry. Co.* v. *Boles,* 88 Ark. 533, 115 S. W. 375. He could state and have his witnesses state any and every fact concerning the property which he would naturally be supposed to adduce in order to place it in an advantageous light if he were selling it to a private individual. *Little Rock Junction Ry.* v. *Woodruff,* supra; *Stuttgart & R. B. R. Co.* v. *Kocourek,* 101 Ark. 47, 141 S. W. 511. An owner is entitled to show the availability of his property for any and all purposes to which it is plainly adapted, or for which it is likely to have value and induce purchases. *Arkansas State Highway Commission* v. *Brewer,* 240 Ark. 390, 400 S. W. 2d 276; *Arkansas State Highway Commission* v. *Griffin,* 241 Ark. 1033, 411 S. W. 2d 495; *Gurdon & Ft. Smith R. Co.* v. *Vaught,* 97 Ark. 234, 133 S. W. 1019. The same considerations are to be regarded as in a sale between private parties. *Ft. Smith & Van Buren Bridge District* v. *Scott,* 103 Ark. 405, 147 S. W. 440; *Little Rock & Fort Smith Railway* v. *McGehee,* 41 Ark. 202.

We have many times permitted evidence of value-influencing factors to be considered in arriving at just compensation without any testimony relating to their

relationship to before and after values, under the rules hereinabove stated, which include:

Details as to kind and character of materials that went into the construction of a home on lots across which a railroad right-of-way was taken. *Kansas City Southern Ry. Co.* v. *Boles,* 88 Ark. 533, 115 S. W. 375

Increased cost of transportation of select material for highway construction from the site nearest to lands taken. *Arkansas State Highway Commission* v. *Cochran,* 230 Ark. 881, 327 S. W. 2d 733.

The number, kind and value of various nursery plants on land condemned. *Arkansas State Highway Commission* v. *Hood,* 237 Ark. 202, 372 S. W. 2d 387.

Cost of replacing a fence, replacement of shrubs and flowers, moving house back from right-of-way line, replumbing and rewiring house and loss of trees. *Arkansas State Highway Commission* v. *Carpenter,* 237 Ark. 46, 371 S. W. 2d 535.

Cost of additional well, additional flume, and new road required because of severance of rice farm by highway right-of-way. *Arkansas State Highway Commission* v. *Speck,* 230 Ark. 712, 324 S. W. 2d 796.

Rental income or value. *Desha* v. *Independence County Bridge Dist.,* 176 Ark. 253, 3 S. W. 2d 969.

Cost of restoration of a retaining wall. *Kirk* v. *Pulaski Road Improvement Dist.,* 172 Ark. 1031, 291 S. W. 793.

Reproduction cost of improvements. *City of Little Rock* v. *Sawyer,* 228 Ark. 516, 309 S. W. 2d 30.

Cost of relocation and reconstruction of a combination store building and residence. *Arkansas State*

*Highway Commission* v. *Bryant,* 233 Ark. 841, 349 S. W. 2d 349.

Moving costs. *Arkansas State Highway Commission* v. *Jackson County Gin Co.,* 237 Ark. 761, 376 S. W. 2d 553.

If a landowner is deprived of receiving the value of his land as a bridge site on the theory that there is no demand for such a site by anyone except the condemnor, then our constitutional provision is rendered meaningless in such a case. The rule that value to the condemnor is not the measure of just compensation certainly should not be so applied. True, just compensation is to be measured by market value, but that value is to be measured by the price the land would bring in the market where sellers and buyers are informed as to all uses for which it is available and adaptable. We have previously avoided such a result. See *Ft. Smith & Van Buren Bridge District* v. *Scott,* supra, as quoted.

In *Little Rock & Ft. Smith Ry.* v. *McGehee,* 41 Ark. 202, where the owner sought to recover for his land as a ferry site this court said that, although no ferry may have ever been established there, it was possible, and maybe probable, that a change of circumstances or the development of the country might require one in the near future. The condemnor had contended that this use of the property should not be considered, because of supposed exclusive privileges in the proprietors of a ferry one mile away, and the doubt whether a ferry license would ever be granted and a ferry actually established.

In *Scott* v. *State,* supra, we said:

It seems to us that the very fact that the State desires to acquire this land so that it may be deeded to the United States for national park purposes is a strong indication that appellant's land has a peculiar value.

I submit that, even if appellant's "motion for a directed verdict" could be considered as a motion to strike Hood's value testimony, which I do not concede, it cannot be the basis for reversible error, because it came too late. In *Arkansas State Highway Commission* v. *Stallings*, 248 Ark. 1207, 455 S. W. 2d 874, we held that the landowner's testimony was based upon an improper standard for market value and did not constitute substantial evidence. Still we said that failure to strike his *value* testimony was not error when the condemnor did not object or move to strike the testimony until after the landowner had presented the testimony of an expert witness and rested. There we said:

> The same authorities demonstrate that inexcusable delay in making a motion to strike objectionable testimony may be grounds for denial of the motion and that a court may properly overrule such a motion made after a witness has been excused from the stand, or discharged from attendance at the trial or after other witnesses have testified or after the proponent's case has been concluded. It may well be that the proponent would be severely prejudiced by a delay in making a motion to strike or that the trial judge should not be expected to put the testimony to which belated objection is made in proper perspective to make a correct ruling after other witnesses have testified, particularly where a close question is involved and the exact words of a witness may be the determining factor. The trial judge is in a much better position than an appellate court to judge whether such a motion is timely under the circumstances existing when it is made. He should only be held to the exercise of a sound judicial discretion under the circumstances existing here. We cannot say that denial of the motion of appellant was an abuse of discretion so we find no error on this point.

The trial judge sustained appellant's objection to Hood's stating the basis of his opinion on the value on a bridge site. Appellant did not object to Hood's

stating his opinion as to the value, and withheld objection until he began to state his basis. Then the objection went only to the basis, not to the value opinions. Appellee then made an offer of proof as to what this testimony would have been. Thereafter, no further testimony was given on this subject by Hood, and appellant did not cross-examine him on his valuation of the property as a bridge site. I would be unable to say that the trial judge abused his discretion in this regard. There must have been some tactical reason why appellant did not object to appellee's value testimony based on the property's adaptability as a bridge site and did not make a timely motion to strike it. Appellant should not be heard to say that, under the circumstances, there was an abuse of discretion in denying a belated motion.

Turning to the argument that Hood's testimony did not constitute substantial evidence, because he used an improper basis, i. e., the saving to condemnor in utilizing this site, rather than the one it found next best, I would point out that the majority opinion entirely overlooks the fact that this basis of valuation was never known to the jury and that Hood valued the whole property at $648,000 for industrial purposes before the taking and the remainder at $15,000 after the taking. Appellant does not argue that this testimony was inadmissible. It does make a cursory argument that it is not substantial, which hardly extends beyond a bare statement that it is not. Assuming for the moment, but not conceding, that appellant is correct, there is no ground for reversal on this basis either. The owner's value testimony, both that relating to a bridge site and that relating to industrial uses, was manifestly not prejudicial, and was obviously disregarded by the jury. It obviously did not enhance the award, and the verdict was supported by other substantial evidence. *Arkansas State Highway Commission* v. *Ormond,* 247 Ark. 867, 448 S. W. 2d 354. Time and space limitations prevent elaboration, but I do not consider that appellant demonstrated that the opinion of appellee's expert witness Garland Hudson was without any reasonable basis. He testified that the whole property had a value of $150,400,

and the remainder a value of $16,000, making a difference of $134,400. The jury verdict was substantially less.

Other points covered in the majority opinion have to do principally with points raised by appellee on cross-appeal. I concur in the majority's holding as to evidence of the tax assessment. I do not agree with that as to difference in construction costs. I think that the evidence offered should have been admitted, and I do think that authority for its admission is found in *Gurdon & Ft. Smith Railroad Co.* v. *Vaught,* 97 Ark. 234, 133 S. W. 1019 and other cases. I would enlarge upon the majority's quotation from that case. This court there said:

> Counsel for defendant urge that the court erred in permitting these witnesses to testify that the land taken by defendant had a pecuniary advantage for a railroad site over all other lands in this vicinity along any possible route for a railroad, because of the great cost in making any other site feasible for the location of a railroad through these mountains; and in this connection the witnesses gave an estimate of the great expense and cost in preparing another site for railroad purposes in comparison with this site, to which testimony objection was made. It is urged that this testimony, in effect, based the value of the site taken upon the benefit that it might be to defendant and of its necessities to acquire that particular property, rather than on the actual market value thereof, and the loss to the plaintiff by the defendant's appropriation thereof. But we do not think that this contention is well founded. The measure of the compensation which the landowner is entitled to recover from a railroad company which has appropriated same for its right of way is the market value of the land so taken. In estimating that market value, it is perfectly competent to consider the availability and adaptability of the land for the very purpose for which it is taken by the railroad company as an element of value which would attract any buyer for that purpose. In order to show the adaptability of the land

taken for the purpose desired, it is competent to show the cost and expense that would be necessary to put other land in the condition of the land taken, which condition gives it a peculiar value for the purpose for which it is appropriated. This would not be estimating the damages by reason of the value of the property to the corporation which appropriated it, or by reason of its necessities to acquire same; but would be simply showing an element of its value to any one who might desire it for that purpose. The owner has a right to obtain the market value of the land based upon its availability for the most valuable purposes for which it can be used. The peculiar circumstances of its location and the character of the surrounding country may be proved in order to show the adaptability of the land taken for the purpose desired, because that would be an element of value which the owner would have a right to insist upon in estimating the value of his land. In the case of *Boom Company* v. *Patterson*, 98 U. S. 403, the Supreme Court of the United States has laid down the rule that, in determining the value of the land appropriated for public purposes, the inquiry is what is it worth from its availability for all valuable uses. This rule has been approved by this court in a number of cases. [Citing cases.]

The market value of property is to be determined, not by the price of the property for any one particular purpose, but for any and all purposes for which it is likely to have value and induce purchases. And so it is competent to show that it has a value for a peculiar purpose which would attract buyers and any testimony is competent to show its adaptability for that peculiar purpose. Its availability for such peculiar purpose may be proved by showing its advantages over other property that might also be probably available for such purpose, for that would be an element of value that any buyer would take into consideration if he wished to purchase the property for such purpose. Testimony, therefore, of the cost and expense of placing other property

that might be available for the desired purpose in that condition of the property taken, would tend to show the advantages of such property and its true market value to prospective buyers. This was the character of the testimony of which complaint is made. But we think that this testimony was competent. This testimony did not tend to base the value of this gap or pass upon what it was worth to the defendant or upon how profitably it might be employed or used by it. The purpose and tendency of this testimony was to show that this site had a special pecuniary value over any other place in that mountainous section of the country for the location of a railroad, and thereby to show its availability and adaptability for railroad purposes. Its advantageous location was an element of value, and in determining what was its market value it was competent to show the facts and circumstances which made that location advantageous for railroad purposes which thus gave to it this element of value. The cost and expense of placing any other site in that section of the country in a condition available or adaptable for railroad purposes which the site in controversy possessed would tend to prove the peculiar advantages of this location for such object and its adaptability for such purposes. It was not error to admit such testimony for that purpose. [Citing cases.]

The distinction made by the majority is one without a difference. What is the difference in building a fill and building a span? One's redesigning his structure to fit mother earth may even be less costly than trying to make mother earth fit his designs, and there is no indication or likelihood that the channel of the Arkansas River would or could be changed at the alternate sites considered to accommodate a bridge at any of them that would minimize hazards to navigation to the extent required. The additional construction at the next best site may well have been only a substitute for an even more expensive fill. The result of a survey by appellant's consulting engineers was very favorable to this

location. This was the point at which the bridge would be the shortest and where the crossing could be at a right angle to the stream. Leo Tyra, a civil engineer, testified that he concurred in the report of the consulting engineer, just as did appellant's bridge engineer at the time the decision was made, and, as a matter of fact, appellant itself. It appeared obvious to Tyra that the location of the bridge was based upon selection of the site on appellee's side of the river and the terminus on the other side then located to the best advantage to meet design criteria. Hood also testified, in camera, that he had studied the report of the consulting engineers and that they had considered a number of other routes, but abandoned them when preliminary investigations indicated disadvantages not inherent in locations on appellee's land and another site. He also testified that one advantage lay in the fact that appellee's land afforded a high and stable bank—one that had not moved for as long a period of time as available pictures of the river would reveal.

I do not feel that the majority's attempt to distinguish *Little Rock Junction Ry.* v. *Woodruff*, 49 Ark. 381, 5 S. W. 792, 4 Am. St. R. 51, is based upon a valid distinction. The court did not determine the admissibility of the evidence on the question whether the interrogatories to the witness were misleading. When other statements of the court are considered, it is apparent to me that the court there held that testimony as to savings and pecuniary advantages in the utilization of one bridge site rather than another is admissible. The full text follows:

One or more witnesses for appellees were asked to give the comparative cost of building bridges at different points along the river front above and below the Point of Rocks, or, rather, to state the difference in such cost. The witnesses were also asked, "What is the value of the property for bridge purposes?" It would have been less misleading to have asked, "What would be saved by building a bridge at this point, as compared with other points

below and above?" or, "What were the pecuniary advantages offered by this point for building a bridge?" It is very apparent, however, from the argument, that the objection taken by counsel is not the objection which we take to this interrogatory. He objects to any and all testimony about a bridge-site, while we only criticise because we are disposed to suspect that counsel for appellees introduced the word "value" in this connection as a sort of covering for the rather scant testimony with which their case was clothed. In fact, if there had been an ample supply of direct testimony as to the market value, we cannot say that the form of this interrogatory would have called for any animadversion. We think, however, that if any mistaken impression was made upon the minds of the jury by this method of examination, it was effectually removed by the emphatic and repeated injunctions contained in the instructions, to the effect that the market value should be considered by the jury as the aim and end of their verdict.

In the present case, the court gave appropriate instructions on the measure of just compensation, including the following, requested by appellant:

In this case, just compensation which the Constitution of Arkansas entitles the owner to receive for land on account of the taking for highway purposes is the difference between the fair market value of the defendants' land as of the date of taking, which was March 29, 1968, and the fair market value of the land remaining immediately after the taking, considering the facility constructed and in place.

You are instructed that in order to consider the highest and best use of the property sought to be acquired as that of a bridge site, you must first determine that the 2.01 acres are peculiarly adapted for such use.

In arriving at the market value of the land before the taking, you are not limited to the uses to which

it is at the time applied, but the owner is entitled to compensation considering the market value for any use for which the property is suitable, having regard to the existing business or needs of the community, or such as may be reasonably expected in the immediate future. The owner has the right to obtain the market value of his land based upon its availability for the most valuable purpose for which it can be used, whether or not he so used it.

The holding in *Woodruff* certainly seems to be applicable here. We thought so in *Arkansas State Highway Commission* v. *Carpenter,* supra; *Pulaski County* v. *Horton,* supra; *Kirk* v. *Pulaski Road Imp. Dist.,* supra; *Kansas City Southern Ry. Co.* v. *Boles,* supra, as well as in *Vaught.*

In *Missouri Pacific Railroad Co.* v. *Clements,* 225 Ark. 268, 281 S. W. 2d 936, we affirmed an award of $3,200 for land worth $700 as timberland. This was based on 80,000 cubic yards of fill dirt worth 4¢ per yard, taken from the owner's land, there being no other evidence of market value. Significantly, the court said:

It is undisputed that the location and terrain of the land destroyed made it by far the most suitable and economical in the area for the railroad's use. The use of any other available land in the area would have entailed a much longer haul and added considerably to the cost of the project.

I would affirm the judgment.

I am authorized to state that Chief Justice HARRIS and HOLT, J., join in this dissent.